## VAN AERNAM *vs.* VAN AERNAM.

The complainant, in a suit for a divorce, who asks for a decree declaring the children of the defendant illegitimate, must produce some further evidence of his non-access than the mere fact that his wife was living in adultery with another person.

The maxim, *pater est quem nuptiæ demonstrant* is founded upon very strong reasons of policy as well as of law. And courts should not unsettle the title to property, nor put the *status* of any one in jeopardy, by speculating upon the mere probabilities in favor of the illegitimacy of a child who may, or may not, have been begotten by the husband of its mother.

The ancient rule of the common law, that the husband must be presumed to be the father, if he was within the realm during any part of the period of gestation, has long since been repudiated by the courts.

It is not necessary, in order to bastardize the issue, that the evidence should be such as to render it impossible that sexual intercourse should have taken place between the husband and wife. It is sufficient if it proves beyond a reasonable doubt, that no such intercourse did take place, during the usual period of gestation, previous to the birth of the child.

The court of chancery, upon dissolving the marriage contract for the adultery of the wife, is not authorized to declare one of her children illegitimate, who must have been begotten before the commission of the adultery charged in the complainant's bill.

Where the wife of the complainant was for several years living in the same place with him, as the concubine or kept mistress of another person, the husband in the meantime making no exertions to break up the adulterous intercourse; *Held* that, in the absence of evidence of non-access, the complainant must be presumed to be the father of the children begotten upon his wife during that time; and that he was not entitled to a decree declaring such children to be illegitimate.

THE bill in this case was filed by the husband to obtain a divorce from his wife, upon the ground of her adultery. It appeared from the bill that the defendant had two children; who, as the complainant charged, were illegitimate. And from the proofs it appeared that she had another child born a short time after the filing of the complainant's bill. The master to whom it was referred to take proofs of the facts and circumstances stated in the bill, reported that the defendant had been guilty of the adultery charged; and that all three of the children were illegitimate.

*H. Fuller*, for the complainant.

Van Aernam *v.* Van Aernam.

THE CHANCELLOR.   The adultery is sufficiently established, in this case, to entitle the complainant to a divorce.   But the master erred in supposing that the testimony before him was sufficient to authorize the court to declare all the children illegitimate.   The statute declares that when the husband is complainant, the legitimacy of children, born or *begotten* before the commission of the offence charged, shall not be affected by the decree.   And even as to children begotten after that time, and before the commencement of the suit for the divorce, their legitimacy shall be presumed until the contrary is shown.   (2 *R. S.* 145, § 42.)   The first offence of adultery charged in the complainant's bill, in this case, is stated therein as having occurred sometime in the year 1841, but without stating at what particular time of the year.   It cannot, however, be presumed to have occurred so as to have broken off sexual intercourse between the complainant and the defendant until the time when he says he first learned the fact, in July or August of that year.   If the eldest child, therefore, was born within the usual period of gestation from the first of July, 1841, it must have been begotten before the time of the commission of the first offence charged in the bill.   At least such is the legal presumption, in the absence of any evidence of a premature birth.   The time of the birth of such first child, however, is not stated either in the bill or in the proofs, so as to enable the court to form an opinion whether it was, or was not begotten before the commission of the first offence charged in the bill.   It is true, one of the witnesses, who was examined in December last, stated that the defendant had lived and cohabited with her paramour for the last five years, and that her eldest child was born more than one year after she commenced living with him.   That, however, would extend the adulterous intercourse back into 1840, and would not show that the child was begotten after the commission of the first offence charged in this bill.   The time of the birth of that child should at least have been ascertained, to enable the court to see whether it was probably begotten after the first offence charged.   For if it was begotten before that time, the court has no jurisdiction to declare it illegitimate; even if the fact of the non-access of the husband was fully established.   (2 *R. S.* 145, § 44.)

Again; the mere fact that the wife of the complainant was living in the same place with him as the mistress or concubine of another man, for several years, the husband in the meantime making no exertions to break up such adulterous intercourse, and taking no steps to obtain a divorce, is not sufficient evidence from which the non-access of the husband can be legally presumed; so as to entitle him to a decree bastardizing the children of his wife. The bill states the residence of the complainant to be in Schenectady, where the defendant and her paramour are proved to have also openly cohabited together. And the husband, in substance, admits that he was acquainted with their adulterous intercourse more than four years previous to the filing of his bill. Some farther evidence, therefore, should have been produced by him to prove his non-access in the meantime. In a case in the year books, (1 *Hen.* 6, 3, 7,) Justice Rolf says, " Although the wife leaves her husband and lives with an adulterer, her son is legitimate and shall inherit, unless his adversary can show some special matter." In other words, the party insisting upon the illegitimacy of the son born in wedlock, must give some farther evidence of the non-access of the husband, than the mere fact that the wife was living in adultery with another. The legal maxim, *pater est quem nuptiæ demonstrant,* is founded upon very strong reasons of policy, as well as of law. And courts should not be permitted to unsettle the title to property, or to put the *status* of any one in jeopardy, by speculating upon the mere probabilities in favor of the illegitimacy of a child, who might or might not have been begotten by the husband of its mother. In the strong language of Lord President Blair, in *Routledge* v. *Carruthers,* (*Nicol. Adult. Bast.* 161,) " this legal maxim, that he is the father whom the nuptials show to be so, is the foundation of every man's birth and status. It is a plain and sensible maxim, which is the corner stone, the very foundation on which rests the whole fabric of human society; and if you allow it once to be shaken, there is no saying what consequences may follow." The ancient rule of the common law was, that the husband must be presumed to be the father, if he was within the realm, during any part of the time, within the ex-

---

Van Aernam v. Van Aernam.

---

treme limits of the period allowed for gestation.   This rule has long since been repudiated by the courts, as not consistent either with reason or common sense.   For, other evidence of the non-access of the husband, is frequently as strong and satisfactory to show the actual impossibility that the husband could have been the father of the child.   Nor is it necessary that the evidence should be such as to render it impossible that sexual intercourse should have taken place between the husband and wife.   It is sufficient if it proves, beyond a reasonable doubt, that no such intercourse did take place.   But though I utterly reject the ancient strictness of the rule on this subject, and with it the coarse elucidation of the rule adopted by Judge Rickhill, in *Flettsham and Julian*, (*Year Book*, 7 *Hen. 4th*, 9, 13,) which the great dramatist afterwards puts in the mouth of King John,(*a*) I cannot consent to relax the settled rule of the law on this subject beyond what was done by this court in the case of *Cross* v. *Cross*, (3 *Paige's Rep.* 139.)

The usual decree for a divorce must be entered in this case, but without bastardizing the children; unless the complainant prefers to have the case referred back to the master, to enable the latter to receive evidence of the actual non-access of the husband; or proof that he was residing at such a distance from her at the time these children must have been begotten, or such of them as were not begotten previous to the adultery charged in the bill, as fully to rebut the presumption that they are his children.   If he prefers to have a further inquiry on that subject, the matter will be referred back to the master to review his report, and to take further testimony; and the entry of the decree in the meantime will in that case be suspended.

> (*a*)   *K. John.*   " Sirrah, your brother is legitimate;
> Your father's wife did after wedlock bear him:
> And, if she did play false, the fault was her's:
> Which fault lies on the hazards of all husbands
> That marry wives.   Tell me, how if my brother,
> Who, as you say, took pains to get this son,
> Had of your father claimed this son for his?
> In sooth, good friend, your father might have kept
> This calf, bred from his cow, from all the world."
>
> (*King John, act 1, scene 1.*)