BAILEY ET AL. *v.* BOYD.

SUPREME COURT.—*Assignment of Error.—New Trial.—Exclusion of Evidence.*
—Error in the exclusion of evidence offered is cause for a new trial, but
can not be assigned independently as error, on appeal to the Supreme
Court.

DESCENT.—*Bastard. —Marrying Pregnant Woman.—*If a man marry a
woman whom he then knows to be pregnant with a bastard child,
charged to be his, and thereafter live and cohabit with her, he thereby,
under section 9 of the act of May 14th, 1852, regulating descents, 1 R. S.
1876, p. 410, conclusively acknowledges such bastard to be his, and on
his death, leaving such child surviving him, it is a legitimate heir.

From the Clinton Circuit Court.

*J. N. Sims,* for appellants.
*L. McClurg, J. V. Kent, R. P. Davidson* and *J. C. Da-
vidson,* for appellee.

HOWK, J.—This was an action by the appellants, as plaintiffs, against the appellees, as defendants, in the court below, to recover the possession of certain real estate, in Clinton county, Indiana.

The appellee answered the appellants' complaint by a general denial.

The issues joined were submitted for trial to the court without a jury; and the appellants having introduced their evidence, the appellee demurred thereto, and for the purposes of this suit duly admitted the facts in evidence, and all inferences the court might reasonably and rightfully draw therefrom, in which demurrer there was a joinder by the appellants. The appellee's demurrer to the evidence was sustained by the court, and to this decision the appellants excepted; and the court rendered judgment on said demurrer, in favor of the appellee and against the appellants, for the costs of suit. The appellants' motion for a new trial was overruled, and they excepted to this decision.

In this court, the appellants have assigned, as errors, the following decisions of the court below:

"1st. That the circuit court erred, in sustaining the demurrer of the appellee to the appellants' evidence, and in rendering judgment thereupon against the appellants;

"2d. The circuit court erred in refusing to allow the appellants to read in evidence, at the trial, the certificate of Elisha Keller, justice of the peace, of the marriage of Bazil Bailey to Sally Shockey, authenticated by the certificate of Thomas Walker, probate judge of Ross county, Ohio, and the seal of said court."

The second alleged error is improperly assigned as such in this court. The decision of the court below complained of therein, if erroneous, was error of law occurring at the trial, and as such it should have been assigned as a cause for a new trial, in the appellants' motion therefor. It was not assigned as a cause for a new trial in the

court below, and it can not be assigned, as error, in this court.

On the trial of this cause in the court below, "before introducing oral evidence, it was, upon agreement of parties and for the purposes of this trial, admitted, that both parties, the plaintiffs and defendant, claimed title from one Bazil Bailey, Sr., as a common source of title; that said Bazil Bailey, Sr., was, at the time of his death, in April, 1872, seized of the lands in controversy, in fee simple, the plaintiffs claiming through collateral, and the defendant through alleged lineal, descent from said Bazil' Bailey, Sr., by purchase from one Bazil Bailey, Jr."

Under this agreement of the parties, the real question for trial in this case was this: Was Bazil Bailey, Jr., the legitimate son of Bazil Bailey, Sr.? If the younger Bazil was the lawful heir of the elder Bazil, then the appellants, who were the nearest collateral kindred of the elder Bazil, had no title to nor interest in the lands in controversy. But if, on the other hand, the younger Bazil was not the son and heir of the elder Bazil, then the appellants were the owners in fee simple, and entitled to the possession, of said lands, as alleged in their complaint. We find it necessary to the proper and intelligible presentation of this cause, that we should set out, in this opinion, at least the substance of such portions of the evidence as bear upon the main question above stated.

George W. Shockey's evidence was as follows:

"My name is George W. Shockey; live in Clinton county, Perry township, west side of the county, 8 or 10 miles from Frankfort. I knew Bazil Bailey, Sr., in his lifetime. He married my sister, and I married his sister. I was present when he was married to my sister; they were married in Ross county, Ohio. He was married by Elisha Kelley, a justice of the peace, in 1824, about the 1st of February. I was not then married. Bazil Bailey came to my father's about the 1st of March, 1823; he was there a few days, and went away to some iron works,

about thirty miles away, I don't know where, and worked all Summer till September next, from the 15th to the last, when he became a regular boarder in the family. My sister had a regular suitor for about two years before he came back. His name was Alec. Mann; he was waiting on her. When Bazil Bailey, Sr., came back, he boarded and stayed there until they were married. I was not there all the time. I was gone to an iron works. When they were married she was pregnant. *There was considerable of a fuss about it among them; my father and mother made a fuss, and wanted Bazil, Sr., to marry her; good deal said, but I can't tell all what it was that was said. There was a fuss up about it, and I went with Bazil, Sr., the day before they were married, to Chillicothe, to get the license. Bazil, Sr., went reluctantly. On the way, he said to me that the child was not his, but he would marry her, but would not live with her. The child was born in March, 1824. It was the same who is now Bazil Bailey, Jr., who is now present. I don't know what time in the month the child was born. Mann came on for about a month after Bazil Bailey, Sr., came back. The mother of Bazil Bailey, Jr., is dead. She died in 1859. About two years after his birth, his mother had another child, which lived about five months and died. She had no other child than Bazil living when she died. Bazil Bailey, Sr., moved to this State, and lived on section 32, in west part of the county. Don't know just where he had lived in Ohio. I moved to Kentucky in 1831, and did not know how many places he had lived at. He had lived in two or three places in Ohio before he came here, but came here from near Bainbridge, Ohio. Bazil Bailey, Sr., has no father or mother living that I ever saw; never saw them, but understood by letter that they were dead."

On his cross-examination, after giving some account of himself, which we need not set out, this witness further testified: "Bazil, Sr., came to my father's about the 1st

of March, 1823. It was some time after that that he went
to learn the trade. Went to work at three o'clock in the
morning, and worked until one or two in the afternoon.
There was considerable difficulty about my sister; right
smart fuss for two or three days. Think it commenced
about two days before I went with Bazil to Chillicothe.
I was a friend of Bazil's. When he said he was not the
father of the child, and would not marry my sister, I do
not remember what I said. Do not remember what else
he said. Can't tell what we said, except as I have said.
Chillicothe was 15 or 16 miles away. We did not ride;
it was too cold, and we walked. Bazil, Sr., made his
home at my father's from the September before; can't
tell what time in September. They made considerable
of a row about it. My parents found out that my sister
was in the family way, and made a fuss with Bazil, Sr.,
about it; wanted him to marry her, and he said he didn't
want to do it. He said if he married her, he wouldn't
live with her. They said she was in the family way, and
he must marry her. Don't remember what all was said,
but in the fuss they said he must marry her. Her preg-
nancy was plain to be seen. My parents charged Bazil
with being the father of the child, or something of the
kind was said in the fuss. The fuss was for several days.
Before that time he had been at Benner's forge. Bazil,
Sr., and my sister were married in February, 1824, and
lived together until she died in 1859. I was very well
acquainted with Bazil, Sr.; was intimate with him; lived
part of the time in the same house with him. They
moved here in the Spring, and I the next Spring."

This witness was the father of some of the collateral
kindred of Bazil Bailey, Sr., who were plaintiffs in this
suit, the witness' wife, then deceased, having been a sis-
ter of Bazil, Sr. The other evidence in the record was
chiefly given for the purpose of proving the relationship
of the appellants to Bazil Bailey, Sr. Two physicians
testified that the ordinary period of pregnancy in women

was about 280 days, and they concurred in saying that a child born in less than seven months after conception could not live to maturity.

Fill P. Bailey, a brother of Bazil, Sr., and one of the appellants, testified, that "Bazil Bailey, Sr.'s, wife died in 1859, and left no other children than Bazil Bailey, Jr. He never afterward married. There was no family record that ever I saw or knew of. I have seen his family Bible many a time. Heard Mrs. Bazil Bailey speak of the date of the birth of Bazil Bailey, Jr., a number of times, and say that it was on the 9th day of March, 1824."

We have now set out the substance of the evidence for the appellants, as it appears in the record. On this evidence, the question for our decision is this: Does this evidence show, that Bazil Bailey, Jr., was not the legitimate son and heir of Bazil Bailey, Sr.? "By a demurrer to evidence, all the facts of which there is any evidence are admitted, and all conclusions which can fairly and logically be deduced from those facts." *Bulkeley* v. *Butler*, 2 B. & C. 434; *Lindley* v. *Kelley*, 42 Ind. 294; and *Strough* v. *Gear*, 48 Ind. 100. In section 9 of " An act regulating descents and the apportionment of estates," approved May 14th, 1852, it is provided, that, " If a man shall marry the mother of an illegitimate child, and acknowledge it as his own, such child shall be deemed legitimate." 1 R. S. 1876, p. 410.

Under this statutory provision and the evidence in the record, it seems very clear to us, that Bazil Bailey, Jr., must be deemed and held to be the legitimate son and heir of Bazil Bailey, Sr.; and this would be so, in our opinion, even if the evidence had shown conclusively, that the elder Bazil could not have begotten the younger Bazil. A rather lame and futile attempt was made by the appellants to show that Bazil, Sr., could not have been the father of Bazil, Jr., by proof of the fact that the mother of the latter and Bazil, Sr., were living thirty long miles

apart, at or about the time that Bazil, Jr., was begotten. The evidence fails to show that Bazil, Sr., did not, during the Summer of 1823, regularly visit his future wife; and it can not be inferred that he did not thus visit her, merely from the fact that, during all that time, he resided thirty miles distant from her father's house. The evidence showed, that, in February, 1824, the pregnancy of Sally Shockey was "plain to be seen;" that, when her parents charged Bazil, Sr., with the paternity of her unborn child and told him that he must marry her, although he said the child was not his, and that he didn't want to marry her, yet he walked fifteen miles for the marriage license and did marry her; that, when the child was born, shortly after the marriage, it received his full name of Bazil Bailey; and that the elder Bazil and his wife lived together from the time of their marriage in February, 1824, until her death in July, 1859, or for more than thirty-five years. It seems to us, it may fairly and logically be inferred, from all the facts in evidence, that the elder Bazil acknowledged the younger Bazil as his own child, and, therefore, that the latter must be deemed legitimate. It was not necessary that this acknowledgment should have been expressed in words; but it may fairly be inferred, from the acts and conduct of the elder Bazil. In 2 Bacon's Abridgment, page 83, it is said: "If a woman marry, *grossment ensient*, it is the child of the husband; for, when they testify their consent by a public marriage before the birth of the child, it is a public acknowledgment that the child is his; for at that time the child is one with the mother, and therefore in taking the mother he takes the child with her." In the case at bar, this "public acknowledgment" by the elder Bazil, by marriage, that the child was his own, was made even stronger and more conclusive, we think, by the subsequent acts and conduct of Bazil, Sr., and the mother of the child through many years and until separated by her death.

Our conclusion is, that the court below committed no error in sustaining the appellee's demurrer to the appellants' evidence.

The judgment is affirmed, at the appellants' costs.