(119 App. Div. 96)

### MAYER v. DAVIS et al.

(Supreme Court, Appellate Division, Second Department. April 19, 1907.)

BASTARDS—EVIDENCE OF ILLEGITIMACY.

Evidence in an action involving the question of heirship *held* insufficient, in view of the presumption of legitimacy, to sustain a finding of illegitimacy of one born to a woman 241 days after death of her husband, in view of the evidence as to the last possible time of intercourse.

Appeal from Special Term, Kings County.

Action by Florence E. Mayer against Marian Davis and others. From so much of the judgment entered after a trial as adjudicated the defendant Charles R. Davis was not a grandson, and so not an heir, of William H. Davis, deceased, said defendant appeals. Reversed, and new trial granted.

The action is for the partition of real estate. William H. Davis, grandfather, is the common ancestor. The appellant claimed an undivided share as the son of Robert Davis, deceased, who was a son of the said William H. Davis. There are two other tenants in common who are the children of another deceased son of the said William H. Davis. Their mother, Nellie Davis, is living. The mother of the appellant died on February 1, 1900.

The appellant was born on April 16, 1881. His mother was the wife of the said Robert Davis, deceased, whom he claims for father. He died in the Kings County Hospital of phthisis before the appellant's birth, viz., on August 18, 1880. He was received there July 2, 1880, and remained there continuously in a public ward which had 16 other beds, all occupied and attended by nurses and physicians, until he died. He married his said wife in 1874 or 1875, and she bore him two children in his lifetime, but they did not survive him.

Nellie Davis, the said mother of the two tenants in common other than the appellant, was the second wife of their said father, the brother of the appellant's father. Her deceased sister was his first. She testified that the said Robert Davis was taken to the said hospital from the home of her said sister and the latter's then husband in Brooklyn; that he had been there continuously "about two months" before being taken to such hospital; that she was living there all the while and helped to take care of him; that he was there without his wife; that the latter never came there to see him; that he never went out of the house while there; that he was not able to walk without assistance from his bed to his chair; that he coughed and expectorated terribly and was so poor that he was only skin and bones; that he was brought there in a cab by his said brother (the husband of her sister and afterwards her husband) from the place in Brooklyn where he and his wife were living together, in order that he might be better taken care of. Her other sister, who then lived in another house in the neighborhood with her husband, testified that she saw him there in his said brother's house also. She gives the same description of his health, says she helped to take care of him there, and also that he was there "about two months."

The trial court decided that the appellant was a bastard.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

Harry E. Lewis, for appellant.

Thomas M. Rowlette, for respondents.

GAYNOR, J. The usual or average period of human gestation, i. e., from the beginning of pregnancy to the maturity of the fœtus, when delivery should and usually does take place, is 10 lunar months, or 40 weeks; i. e., 280 days. The period from intercourse to delivery may not be identical with that of gestation, but much longer. There is much literature, ancient and modern, in favor of the claim that this latter period may normally last 11 calendar months, especially to save a widow and her tardy offspring from anything worse than suspicion; but it has scarcely survived the immortal satire of Rabelais. Book 1, c. 3. Pregnancy does not always take place and gestation therefore begin at the time of intercourse, but several days (even more that a week, respectable medical writers say) later, when the ovum has become ripe to receive the male seed, which retains its vitality in the generative tract meanwhile. By making allowance for this in reckoning back from the birth of a child, and also for the several days, at least, that delivery may be postponed beyond the usual period of gestation, i. e., after the growth of the fœtus has become complete, from 10 to 20 days may be easily added. Coke on Lit. (by B. & H.) p. 123b, notes 1, 2; Gr. on Ev. § 152; Bouv. L. D. vol. 1, p. 882; Herold on Legal Med. c. 40; Lusk on Midwifery, p. 108; Am. Text-Book of Obstetrics, p. 176. Hence 300 days from the time of last possible access is generally established by statute on the continent of Europe as the period to determine legitimacy. Code Napoleon, art. 312. In this state a whole year has long been established by statute as the period in proceedings for the support of bastards. 1 Rev. St. (1st Ed.) p. 647, pt. 1, c. 20, tit. 6; Code Cr. Proc. § 838.

The appellant was born only 241 days after his father's death. But it is claimed that his father did not have access to his mother for 3 calendar months and 17 days preceding his death. This claim, if true, would lengthen the period from the latest possible time of intercourse to the time of delivery 108 days more, i. e., to 349 days, and present a serious case of legitimacy. It rests on the testimony of the mother of the two co-tenants of the appellant, who are contesting his legitimacy. She testified that his father lived in the house of his brother, then the husband of her sister, and afterwards her husband and the father of her said children, for "about 2 months" before he was taken to the hospital, where sexual access to his wife was impossible, and where he died of phthisis after about six weeks (47 days); that she also lived in her said sister's family at the same time, and helped to take care of him; that he never went out while living there, and that his wife never came there to visit him. This is the testimony of a biased and hostile witness, and also improbable in itself. The testimony is that he was brought by his brother to the latter's house from the house where he and his wife were living together (evidently in poverty owing to his sickness), for better care. No estrangement exist-

ed between them, nor any reason why his wife should abandon him, so far as appears. And the length of time is left in uncertainty. The witness testifying from unaided memory after the lapse of over 25 years, gives it as "about" 2 months. We all know how natural it is for a biased witness to stretch weeks into months, even without intending to falsify, especially after such a lapse of time. Except for this testimony, and some slight corroboration by a sister of the witness who visited the house, and testified that the time was "about" 2 months, the legitimacy of the appellant is not even blown upon.

The presumption of fact of legitimacy is one of the strongest known to the law, and of course it cannot be overthrown except by evidence which is stronger. The burden of proof is on the party asserting illegitimacy, and the rule in a case like the present one has been declared to be "that to bastardize the issue of a married woman, it must be shown beyond all reasonable doubt that there was no such access as could have enabled the husband to be the father of the child." Cross v. Cross, 3 Paige, 139, 23 Am. Dec. 778; Van Aernam v. Van Aernam, 1 Barb. Ch. 375; Caujolle v. Ferrie, 23 N. Y. 90; Matter of Matthews, 153 N. Y. 443, 47 N. E. 901; Br. & Had. Com. (Am. Ed.) p. 384, note, and cases cited; Lawson on Presumpt. Ev. p. 108. The feeble and indefinite evidence relied on here is evidently insufficient. If 280 days be taken as the period of gestation, there were within it 39 days of possible sexual access of the appellant's parents before his father went to the hospital, and if 300 days be taken as the period allowed from the latest opportunity of access to delivery, there were 59. The father could therefore have been at his brother's house without access to his wife for several weeks—for nearly 6 weeks—before going to the hospital without the legitimacy of the appellant being jeopardized. Who will say that even an honest recollection of 2 months after the lapse of nearly 26 years may not be just as safely taken for 5 weeks, or even much less?

The hospital doctor testified that he could say that during the last 2 months of life of a man in the father's state of health it was improbable but not impossible that he could beget a child. Not only was this evidence far from conclusive, but it left out the previous month and 17 days.

That the appellant's mother did not make known his birth to her deceased husband's kin is of no significance, for they had ignored her from the beginning. They never met her except at her husband's grave on the day of the funeral, and they left her there. The appellant did go to his grandfather and his uncle in his boyhood and announce his kinship.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.