### COMMISSIONER OF PUBLIC CHARITIES OF CITY OF NEW YORK v. LEARY.

(Supreme Court, Appellate Division, Second Department.   April 28, 1911.)

BASTARDS (§ 65*)—EVIDENCE.

    In bastardy proceedings, evidence *held* sufficient to sustain a finding that defendant was the father of prosecuting witness' child.

    [Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 154, 175–177; Dec. Dig. § 65.*]

Appeal from Court of Special Sessions of City of New York.

Proceeding by the Commissioner of Public Charities of the City of New York, on complaint of Julia Tompkins, against Lester Leary. From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

Walter A. Saxon, for appellant.

Herman Stiefel and Martin Flanagan, for respondent.

HIRSCHBERG, J.   It is conceded that the defendant had sexual intercourse with the complainant many times during the year preceding the birth of the child, and there is no evidence that she ever had sexual intercourse with any other person.   The last occasion of the defendant's intercourse was less than six months before the birth of the child, and the defendant in his brief claims that:

    "The child born, being a mature, full-grown, nine-months child, proves conclusively that the defendant is not the father of said child."

The case was submitted without argument, and the briefs on both sides are devoted to the question whether the child could have been the result of the last intercourse.   Inasmuch, however, as the intercourse admitted was at such times that the defendant may be the father, assuming the full period of gestation to have elapsed and the child to be, as claimed by the defendant, fully grown and mature, the judgment may yet be affirmed as within the possibilities of nature's law.

The child was born on February 14, 1910.   The defendant testified that his intercourse with the complainant commenced in January, 1909, and continued until he went to Maine, which, his father said, was on the 15th day of April, 1909.   The intervening period is 305 days, including the date of intercourse and the date of delivery; and text-

---

writers are agreed that such period is quite within the range of probability. The sexual intercourse was renewed some time after his return from Maine, late in July of the same year.

In Wharton & Stille's Medical Jurisprudence, vol. 3, § 52, a condensed table of actual results in cases of pregnancy is printed, in reference to which the author says:

"The total number of cases here reported is 782, of which 355, or nearly one-half, went beyond the 280th day, up to the 326th day. If we take the number that went beyond the 274th day, there will be 547, or more than *two-thirds* of the whole number of women in these reports whose pregnancy lasted longer than what has been considered the average duration of this condition."

In Appleton's Medical Series, Obstetrics (2d Ed.) p. 164, Professor Williams says:

"Usually labor ensues about 280 days (10 lunar months) after the beginning of the last menstrual period, so that the approximate duration of pregnancy is 270 days, supposing that conception has occurred within the few days immediately following the menstrual flow. This rule, however, is subject to many exceptions, as apparently well developed children may be born as early as the 240th, and as late as the 320th, day after the last menstrual period; and there is no doubt that in exceptional instances the actual duration of pregnancy may equal, if not exceed, 300 days."

In American Text-Book of Obstetrics, the writers say (page 179):

"Numerous cases are on record of a prolongation of pregnancy to 336, 332, 324, and 319 days, respectively, after the last menstruation. Granting that conception in these cases did not take place within a few days after the last menstruation, as is the rule, but was postponed to just before the first missed period of that function, we can subtract about 23 days from these periods of gestation, and will then have 313, 309, 301, and 296 days, each exceeding the ordinary duration of pregnancy."

In Mayer v. Davis, 119 App. Div. 96, 97, 103 N. Y. Supp. 944, Mr. Justice Gaynor, writing for the unanimous court, said:

"The usual or average period of human gestation, i. e., from the beginning of pregnancy to the maturity of the foetus, when delivery should and usually does take place, is 10 lunar months, or 40 weeks, i. e., 280 days. The period from intercourse to delivery may not be identical with that of gestation, but much longer. There is much literature, ancient and modern, in favor of the claim that this latter period may normally last 11 calendar months, especially to save a widow and her tardy offspring from anything worse than suspicion; but it has scarcely survived the immortal satire of Rabelais (book 1, c. 3). Pregnancy does not always take place, and gestation therefore begin, at the time of intercourse, but several days (even more than a week, respectable medical writers say) later, when the ovum has become ripe to receive the male seed, which retains its vitality in the generative tract meanwhile. By making allowance for this in reckoning back from the birth of the child, and also for the several days, at least, that delivery may be postponed beyond the usual period of gestation, i. e., after the growth of the foetus has become complete, from 10 to 20 days may be easily added. Coke on Lit. by H. & B., p. 123b, notes 1 and 2; 2 Greenl. on Ev. § 152; Bouv. L. D. vol. 1 (Rawle's Rev.) p. 882; Herold on Legal Med. c. 40; Lusk on Midwifery, p. 108; Am. Text-Book of Obstetrics, p. 176. Hence 300 days from the time of last possible access is generally established by statute on the continent of Europe as the period to determine legitimacy. Code Napoléon, art. 312. In this state a whole year has long been established by statute as the period in proceedings for the support of bastards. 1 R. S. p. 647; Code Crim. Pro. § 838."

An error in the case cited was corrected on reargument (Mayer v. Davis, 122 App. Div. 393, 106 N. Y. Supp. 1041); but it had no relation to the question now under consideration.

The judgment should be affirmed.

JENKS, P. J., and WOODWARD, J., concur. CARR, J., concurs in result.

BURR, J. In view of the uncontradicted evidence that the child was not a full-term child, this lengthy medical discussion seems to me to be unnecessary. I concur in result.