JAMES A. STILLMAN, Plaintiff, *v.* ANNE U. STILLMAN and GUY STILLMAN, Defendants.

Supreme Court, Putnam County, September, 1922.

*Husband and wife — divorce — misconduct of plaintiff — legitimacy of child — complaint dismissed.*

ACTION for divorce.

*Cornelius J. Sullivan (Outerbridge Horsey, William Rand* and *Gerald Donovan,* of counsel), for plaintiff.

*John F. Brennan (Isaac N. Mills,* of counsel), for Anne U. Stillman, defendant.

*John E. Mack,* guardian *ad litem* for infant defendant.

GLEASON, Referee. This is an action for divorce brought by the plaintiff against the defendant Anne U. Stillman, praying the marriage between the plaintiff and the said defendant be dissolved because of the adultery of the defendant, and as a part of the affirmative relief asked by the plaintiff prays that it be adjudged that the infant defendant Guy Stillman be declared to be illegitimate and not the child of the plaintiff, but the child of one Frederick Beauvais.

The defendant Anne U. Stillman denies the charges of adultery set forth in the complaint and as an affirmative defense alleges that the plaintiff was guilty of adultery with one Florence H. Leeds, one " Helen " and one " Clara " and lived in adulterous intercourse with the said Florence H. Leeds and that the said

Florence H. Leeds gave birth to two children as a result of her adulterous intercourse with the plaintiff.

The infant defendant Guy Stillman appears by his guardian *ad litem* and interposes the usual guardian's answer submitting the rights and interests of the infant defendant to the protection of the court.

The action was commenced by the service of the summons and complaint herein on the 8th day of July, 1920. The counter charge of adultery made by the adult defendant was not interposed until the early part of 1921 and after testimony had been taken in support of the charges of the plaintiff.

Three questions remain for determination, and for convenience sake I have grouped them as follows:

*First.* Can the plaintiff, in any event, succeed as against the defendant Anne U. Stillman, because of his adulterous intercourse with Florence Helen Leeds?

*Second.* Is the infant defendant legitimate?

*Third.* Is the adult defendant guilty of the charges of adultery set forth in the complaint?

This is a very unusual action, as it clearly appears without contradiction that since at least as early as 1916, and ever since that date, during the continuance of this action and down to at least March, 1921, the plaintiff has been sexually intimate with a woman not his wife, known as Florence H. Leeds; has supported and maintained her as his wife, in various places and in various apartments; that during that period she has given birth to two children, who have been recognized by him as his children; has supplied her with motor cars and jewelry; supervised her bank account and has borne the same relations with her as a man ordinarily bears to his own wife.

The proof on this subject was so overwhelming and convincing that the plaintiff's attorneys frankly stated to the referee that no denial would be made of these charges and upon the uncontradicted proof I find that the plaintiff has been guilty of adultery with one Florence H. Leeds and has lived in adulterous intercourse with her from the year 1916 to at least the early part of 1921.

As to the charges of adultery with one " Clara " and with one " Helen," no proof was offered as to any adultery with Clara, but while there is evidence that the plaintiff occupied a stateroom in his yacht with one Helen, no proof has been offered that the said Helen was not the adult defendant herein, and I find the charges of adultery as to the said " Clara " and " Helen " not proved.

A more serious question is presented as to the legitimacy of the infant defendant Guy Stillman.

As the infant defendant Guy Stillman was concededly born in

lawful wedlock, the burden of establishing his illegitimacy is upon the plaintiff, and the plaintiff must establish such illegitimacy by clear and irrefragable proof and beyond a reasonable doubt.

" The presumption of fact of legitimacy is one of the strongest known to the law, and of course it cannot be overthrown except by evidence which is stronger. The burden of proof is upon the party asserting illegitimacy, and the rule in a case like the present one has been declared to be ' that to bastardize the issue of a married woman, it must be shown beyond all reasonable doubt that there was no such access as could have enabled the husband to be the father of the child.' " *Mayer* v. *Davis*, 119 App. Div. 96, 99.

Upon a reargument of the above case, reported in 122 Appellate Division, 393, at page 394, Justice Gaynor states: " The burden was on the respondents to show incontrovertibly — (by ' irrefragable proof,' *Caujolle* v. *Ferrié*, 23 N. Y. 90, 108) *i. e.*, so clearly and certainly as not to admit of denial, dispute or controversy (see ' Irrefragable,' Century Dictionary) — that such access did not take place and this they did not do. It would be hazardous to say there was no access."

The plaintiff apparently realizing the burden imposed on him by law, has sought to establish by a considerable number of witnesses that between Christmas, 1917, and March, 1918, the plaintiff had no access to the defendant, or, at least, if there was any access or meeting between the plaintiff and the adult defendant, the circumstances of such access and meeting would not permit the presumption that sexual intercourse took place at the time of such access and meeting.

No burden is imposed on the plaintiff to establish that it was impossible for the plaintiff to have been the father of the infant defendant, such burden never having been imposed on the plaintiff by the courts of the United States. The only burden imposed on the plaintiff was to establish that if there was access between the plaintiff and the defendant at or about the commencement of the gestation period, that such access or meeting took place under circumstances that show that intercourse did not take place on such occasion.

It is claimed by the plaintiff that during the period from Christmas, 1917, to March, 1918, the plaintiff was never at the home of the adult defendant at Pleasantville and that there was no meeting at any other place which would have naturally permitted the usual intercourse between a husband and wife.

To meet this proof, evidence has been offered on behalf of the adult defendant that on January 6 and January 27, 1918, the plaintiff and defendant were together at his residence, " Mondanne," Pleasantville, N. Y., and between the twelfth and the twenty-sixth

of February the adult defendant with her family stayed at the St. Regis Hotel in New York city, and on one or two occasions the plaintiff was observed taking the elevator which led to her apartments, and the plaintiff answered a telephone call to the adult defendant's apartments. It further appears, without contradiction, that during all this period the relations between the plaintiff and the adult defendant were most harmonious and pleasant, no proof being offered or claimed that at the time the plaintiff and defendant were not carrying on their usual marital relations, and in October previous it is established that the plaintiff and defendant occupied a room together at Lake Dawson, at which time the plaintiff expressed great pleasure at occupying a room with his wife; in fact, it also clearly appears that after the birth of the infant Guy the plaintiff and adult defendant were often together, at which times the plaintiff played the victrola for the benefit of the defendant and the said infant and their relations then were apparently most happy and pleasant.

On the question of access, the testimony of the witness Clawson, strengthened by the letters written by him, setting forth the fact of the presence of the plaintiff at Mondanne, are most convincing.

The evidence on the part of the plaintiff as to non-access is not satisfactory, is not satisfying and does not convince me that no sexual intercourse occurred between the plaintiff and the defendant at about the time of the commencement of the usual period of gestation.

The plaintiff has failed to overcome the presumption of legitimacy, and I, therefore, find the defendant Guy Stillman to be the legitimate child of the plaintiff and the adult defendant.

While the plaintiff's own misconduct precludes the granting of any relief to him in this action, and while the adult defendant asks for no affirmative relief, but sets up the misconduct of the plaintiff as a defense only, the plaintiff asks for an adjudication that the adult defendant is guilty of the charges against her and for a finding to that effect herein.

The testimony adduced by the plaintiff in support of these charges, uncontradicted and unexplained, was sufficient to justify him in believing her guilty of the charges made against her. A careful examination, however, of all of the testimony has shaken my faith and belief in the testimony of the witnesses called in the plaintiff's behalf.

It is claimed that there is evidence tending to establish sexual intercourse between the adult defendant and one Frederick Beauvais, a half breed Indian guide, commencing at Lake Wyagamack, in December, 1916, and continuing down until the early part of the year 1920, and witnesses are called whose testimony the plaintiff claims establishes the following misconduct:

In December, 1916, the adult defendant and the said **Beauvais** slept together at a small club on Little Lake Wyagamack.

About November 25, 1917, and during the week preceding the said date, the adult defendant and the said Beauvais occupied a room together in the Blackburn cottage at Grande Anse.

In the summer of 1918 the adult defendant and said Beauvais lived alone and together in the Blackburn cottage at Grande Anse.

In the latter part of June or the fore part of July, 1919, the adult defendant and the said Beauvais slept together in Beauvais' room at Grande Anse and the said adult defendant's clothing was kept in Beauvais' room.

In September, 1919, the said Beauvais and said adult defendant slept together in her room in the white cottage at Grande Anse, and that at various times in the blue cottage at Pleasantville, and in the main residence there, the said Beauvais and the adult defendant were guilty of acts of misconduct.

In support of the above and as tending to show an adulterous disposition on the part of the adult defendant toward the said Beauvais, a number of letters and a number of alleged acts and conversations on the part of the adult defendant are offered in evidence.

The defendant not only offers evidence tending to establish the untruth and falsity of the evidence of adultery on the part of the plaintiff, but also tending to show that the agents of the plaintiff offered inducements of money, position and to purchase clothes for witnesses if they would testify as to some misconduct between the adult defendant and the corespondent Beauvais, and evidence is offered on the part of the adult defendant to show that in December, 1916, the defendant did not stay at the little club on Little Lake Wyagamack, but that on such occasion the adult defendant had taken the train from Little Lake Wyagamack to the big club on Big Lake Wyagamack where she was stopping at the time.

The testimony of the witness Adams to the effect that in November, 1917, he had creased a roller shade curtain and at night had peeped through the crease and saw the adult defendant and the corespondent in compromising positions is unlikely and unsatisfactory, and when it appears from the testimony of the adult defendant's witnesses that there never was a roller shade in the house and that the small room in which it is claimed the corespondent slept was not at that time used as a bedroom, but as a store-room for duffle, the effect of this testimony is absolutely destroyed.

The testimony as to the occupancy of the Blackburn house in the summer of 1918 and as to the defendant and the corespondent sleeping together in June or July, 1919, and in September of that year, deserves careful scrutiny. The witness Grenon testified that

on fifteen different mornings he peered through the key hole of the door of Beauvais' room and saw Beauvais and the adult defendant sleeping together. It is conceded by all the parties that at the time mentioned the defendant was at the white cottage mentioned by Grenon three nights only, and this, coupled with the testimony of Grenon and Page, to the effect that they also gazed through the window of the room while they were standing on a scaffold, when the greater weight of the evidence shows that at that time no scaffold existed, and the fact that an observation made through the key hole would disclose only the foot of the bed, together with the participation of Grenon and Ferdinand Page with LaFontaine in a room on the second floor of the Hotel Windsor at LaTugue, in a conference in which arrangements were being made for the payment of money to Page and Grenon for testifying, destroys all confidence in their testimony and in the testimony of the witness Page as to the adult defendant and the corespondent occupying a room together in September of the year 1919.

It appears that on most of these occasions the children, and at times visitors and friends were occupying the same premises as the adult defendant and the corespondent; that the partitions between the rooms were simply board partitions, without plastering, and that at least part of the time rooms adjacent to that of the adult defendant were occupied by her daughter and her son, all of which tends to cast a doubt on the reliability of this testimony. The testimony in relation to the moccasins and with relation to finding the Beauvais letters on the bureau and the desk of the adult defendant, lying around loose where any of the servants could read them, the variance between the testimony of the two witnesses who claimed to have seen the so-called Beauvais letters, and the flat contradiction of all by the witness Oliver; the failure of the plaintiff to show how such letters were obtained, except the four letters which he claims to have purchased for $15,000 from the corespondent Beauvais in Canada, are all unsatisfactory.

Upon the whole case, I do not find either sufficient or substantial proof upon which to base any finding of adultery on the part of the defendant, and the plaintiff has failed to substantiate his charge by the greater weight of evidence.

To summarize, I find for the defendants as against the plaintiff, establishing that the charges against the adult defendant are not substantiated; that the infant defendant is legitimate and that the defense setting forth the misconduct on the part of the plaintiff is not only substantiated, but is conceded, and the plaintiff's complaint should be dismissed.

Reported accordingly.