PHILLIPS v. STATE, EX REL. HATHCOCK.

[No. 12,025.   Filed January 7, 1925.]

1. BASTARDS.—*Marriage to pregnant woman, presumption as to paternity of child.*—A man who marries a pregnant woman is presumed to be the father of the child, but the presumption may be rebutted; but when the pregnancy is known to him at the time of the marriage, the presumption is conclusive. p. 358.

2. BASTARDS.—*Proof required of the State when mother married after child begotten.*—In bastardy proceedings by a woman who married after the child was begotten, the State not only has the burden of proving that the defendant had had intercourse with the relatrix at a time when he might have become the father of her child, but also that her husband did not have access to her at such time, even though it required the State to prove a negative. p. 362.

3. BASTARDS.—*In bastardy proceedings by married woman, court will assume existence of sexual relations between her and her husband, before marriage.*—In bastardy proceedings by a married woman, where child might have been begotten by her husband before their marriage, the court will assume the existence of sexual relations between them before marriage where they have not been denied. p. 362.

4. BASTARDS.—*In bastardy proceeding by married woman, evidence held insufficient to rebut presumption of legitimacy.*—In bastardy proceedings by a married woman, where her husband had access to her at the time the child was begotten and could have been the father of her child, evidence *held* insufficient to rebut the presumption of legitimacy. p. 362.

From Delaware Circuit Court; *Clarence W. Dearth,* Judge.

State, ex rel. proceeding against Thomas Phillips. From a judgment against him, he appeals. *Reversed.*

*John J. O'Neill,* for appellant.

McMAHAN, J.—Complaint, in bastardy filed November 30, 1923. The child in question was born February 14, 1922, the relatrix being at that time the wife of Clarence Hathcock, whom she married October 15, 1921. The relatrix and her husband ever since that time have lived together as husband and wife. Clarence Hathcock knew the relatrix was pregnant when he married her. The child at birth was fully developed and ever since its birth has lived with the relatrix and her husband, the latter being present at its birth and having at all times given it the same care and attention he would have given it if it had been begotten by him and born in wedlock. The relatrix and her husband had known each other for ten years prior to their marriage and for six or seven years next preceding their marriage had been keeping company with each other, he calling on her at her home two or three times a week. From sometime in March, 1921, at a time when her husband's mother was sick and confined to her bed, the relatrix did the housework for and took care of the mother, with whom the son, Clarence, was then living. There is no evidence that the relatrix and her husband did or did not have illicit relations with each other prior to marriage. Nor is there any evidence tending to negative the existence of their having had sexual intercourse with each other unless it be the statement of the relatrix when she was asked what he said when she told him she was pregnant. After having testified that ten days or two weeks before their marriage, she told her husband of her condition, she, in response to a question asking what he said at that time, replied by

saying that he said it was impossible unless she had been with someone else as he was not guilty of anything of that kind. This conversation took place after they were engaged to be married. On the preliminary hearing before the justice of the peace, she testified that when she told him of her condition, he said: "We are already engaged to get married and I will marry you." She also testified that prior to November, 1923, she and her husband never had any talk or conversation concerning the paternity of the child, and that, prior to that time, she never told anyone who the father of the child was. The day after its birth, the child was named Vivian Hathcock, and, a few days later, the attending physician made out and filed a birth certificate giving the name of the child, the date of birth, stating it was of legitimate birth and that its father was Clarence Hathcock and giving his age and place of birth as well as the age and place of birth of the mother.

The relatrix testified that she had sexual intercourse with appellant about the middle of June, 1921, and again on June 30, 1921, that the child was begotten on the last date and that appellant was its father. Appellant denied having had intercourse with the relatrix, and he is corroborated in his denial of having had intercourse with her at the times and places named by her.

Appellant having been adjudged the father of the child, appeals and insists that the evidence is not sufficient to sustain the verdict.

It is a well-established rule of law that a man who marries a pregnant woman is presumed to be the father of the child, and this presumption is one of the 1. strongest presumptions known to the law. It is a presumption both of law and fact. This presumption, however, may be rebutted. In *State* v. *Romaine* (1882), 58 Iowa 46, 11 N. W. 721, the court in discussing this question said: "It appears to us that

the rule adduced from the authorities as well as from principle, is, that a child born in wedlock, whether begotten before or after marriage is presumed to be the child of the husband, but that such presumption may be rebutted by strong, satisfactory, and conclusive evidence that the husband did not have *access* to the mother of the child when it was begotten. And if a woman be pregnant at the time of the marriage, and if the pregnancy be known to the husband, he should be conclusively presumed to be the father." (Our italics.)

And the same court in *State* v. *Shoemaker* (1883), 62 Iowa 343, 17 N. W. 589, 49 Am. Rep. 146, said: "One who marries a woman known by him to be *enceinte* is regarded by the law as adopting into his family the child at its birth. He could not expect the mother upon its birth would discard the child and refuse it nurture and maintenance. The law would forbid a thing so unnatural. The child, receiving its support from the mother, must of necessity become one of her family, which is equally the family of the husband. The child, then, is received into the family of the husband, who stands as to it in *loco parentis*. This being the law, it enters into the marriage contract between the mother and husband. When this relation is established, the law raises a conclusive presumption that the husband is the father of his wife's illegitimate child. We must not be understood to hold that this rule prevails in cases involving questions of heirship and inheritance. In these cases the rights of others besides husband and bastard arise. In this case, the rights and liabilities of the husband and child are alone involved; they rest upon the relations which impose upon the husband the duty of maintaining the child. Our conclusion is supported by public policy, and considerations which work for the peace and well being of families. A husband who, in the manner we have indicated, has put himself

in *loco parentis* of a bastard child of his wife, ought not to be permitted to disturb the family relation, and bring scandal upon his wife and her child, by establishing its bastardy, after he has condoned the wife's offense by taking her in marriage."

In *Wallace* v. *Wallace* (1908), 137 Iowa 37, 114 N. W. 527, 14 L. R. A. (N. S.) 544, 126 Am. St. 253, 15 Ann. Cas. 761, it was held that the presumption could be overcome by proof that the husband was impotent; or that he was entirely absent so as to have had no access to the mother; or was entirely absent at the time the child in the course of nature must have been begotten; or was present only under such circumstances as to afford clear and satisfactory proof that there was no sexual intercourse. As was said in *State* v. *Herman* (1852), 35 N. C. 502: "There seems to be no difference in point of law between a case, where the conception was prior and posterior to the marriage, provided the birth be after wedlock, for that makes the legitimacy."

In *Dennison* v. *Page* (1857), 29 Pa. 420, 72 Am. Dec. 644, after reviewing the authorities, the court said: "It follows, from the authorities above quoted, that the legitimacy of a child born in wedlock, though begotten before the marriage, is founded upon the supposition that it was begotten by the man who subsequently became its mother's husband, and that this presumption can only be rebutted by clearly proving that no sexual intercourse occurred between the two at any time when the child could have been begotten. Whether it was begotten in or out of wedlock, where the marriage precedes the birth, the presumption of paternity is the same, and the like evidence is required to bastardize the issue. That evidence is proof of non-access. Where the husband, or he who subsequently becomes such, has

access to the mother of the child, the presumption that he is the father is conclusive."

In *Stegall* v. *Stegall* (1825), 2 Brock. 256, Chief Justice Marshall, said: "This presumption of law may be rebutted by testimony which places the negative beyond all reasonable doubt." The same rule was announced in *Phillips* v. *Allen* (1861), 2 Allen (Mass.) 453.

In *Rhyne* v. *Hoffman* (1862), 59 N. C. 335, the court held that the presumption of legitimacy would stand unless it was proven by irresistible evidence that the husband did not have sexual intercourse with the wife at the time the child must have been begotten. And our Supreme Court, in *Bailey* v. *Boyd* (1877), 59 Ind. 292, held that where a woman was pregnant at the time of marriage and the fact of pregnancy was known to the husband at the time of marriage, he, where his rights alone were involved, was conclusively presumed to be the father of the child.

And in *Mayer* v. *Davis* (1907), 103 N. Y. Supp. 943, 945, 119 App. Div. 96, 99, the rule was declared to be: "That to bastardize the issue of a married woman, it must be shown beyond all reasonable doubt that there was no such access as could have enabled the husband to be the father of the child." To the same effect see *Stillman* v. *Stillman* (1922), 196 N. Y. Supp. 356, 119 Misc. Rep. 862. See, also, *King* v. *Luff* (1807), 8 East 193; *Gibbins* v. *Gibbins* (1891), 13 Ky. Law Rep. 300; *Miller* v. *Anderson* (1885), 43 Ohio St. 473, 3 N. E. 605, 54 Am. Rep. 823; *State* v. *Herman, supra; Taylor* v. *Whittier* (1921), 240 Mass. 514, 138 N. E. 6; *Ellis* v. *Kelsey* (1922), 195 N. Y. Supp. 126, 118 Misc. Rep. 763; *Pinkard* v. *Pinkard* (1923), 252 S. W. (Tex. Civ. App.) 265; *Orthwein* v. *Thomas* (1889), 127 Ill. 554, 21 N. E. 430, 4 L. R. A. 434, 11 Am. St. 159; *Patterson* v. *Gaines* (1848), 6 How. 550, 12 L. Ed. 553, 569.

For a further collection of authorities on this subject, see note to *State, ex rel.,* v. *Ferguson* (1919), 8 A. L. R. 426, and note to *Wallace* v. *Wallace* (1908), 126 Am. St. 253.

The burden was not only upon the State in the instant case to prove that appellant had had intercourse with the relatrix at a time when he might have become the father of her child, but it had the burden of proving that her husband did not have access to her at a time when he might have become the father of the child. And this is true, even though it requires the State to prove a negative. *Boulden* v. *McIntire* (1889), 119 Ind. 574, 581, 12 Am. St. 453; *Clancy* v. *Whinnery* (1915), 47 Okla. 272, 147 Pac. 1036.

In the instant case, the relatrix admittedly kept company with her husband for a period of seven years before their marriage; that he had access to her during all that time and that their relations were intimate. She does not even deny the existence of sexual relations between herself and husband at any time during this period. She asked the court and jury, however, without any evidence on that subject to infer that no such relations existed, though she was willing to admit shameful relations with another, and thus to place the badge of dishonor upon her offspring. There was no competent evidence negativing the existence of sexual relations between the husband and relatrix. The court will therefore assume the existence of the relation, since it is *"not inconsistent* with the facts proved."

Many of the authorities hold that where a man marries a woman known by him to be pregnant, he is conclusively presumed to be the father of the child, some of them hold that such presumption can be overthrown only by evidence that is clear, convincing and irrefragable. It is not necessary, however, that we determine in the instant case the quantum or

character of evidence necessary to overcome the presumption that the child in question is the child of the husband. But we do hold that there is no competent evidence in the record even tending to prove that he did not have access to the relatrix at a time when, in the course of nature, the child might have been begotten, and, therefore, that the evidence is not sufficient to rebut the presumption of legitimacy.

Judgment reversed, with directions to sustain the motion for a new trial.