## MILLER *v*. ROBERTSON.

[No. 269A21. Filed May 27, 1970. No petition for rehearing filed.]

*Daniel J. Harrigan, Bayliff, Harrigan & Cord,* of counsel, of Kokomo, for appellant.

*Donald J. Bolinger, Bolinger & Zirkle,* of Kokomo, for appellee.

CARSON, J.—Petitioner-appellant filed this paternity action in the Howard Circuit Court. The cause was set for trial upon appellant's amended petition which, in substance, alleges that on July 28, 1965, appellant delivered a child conceived and born out of wedlock; that appellee is the father of said child; and, that appellee should be declared the father of, and compelled to support such child. Trial was to the court, and at the conclusion of appellant's evidence appellee moved the court for a finding. After submission of briefs upon the question presented by appellee's motion, the court overruled the motion and, at that time, appellee rested. The court then entered judgment for appellee, which reads as follows:

"The Court finds for the defendant.
The Court orders the plaintiff to pay costs."

Thereafter, within the time set by statute, appellant filed her motion for a rehearing pursuant to Acts 1965, ch. 246, § 1, Ind. Stats. Ann., § 3-640, Burns' 1968 Repl., which motion alleges, in substance, that:

1. The decision of the court is contrary to law;
2. The decision of the court is not sustained by sufficient evidence;
3. The court erred in refusing to admit into evidence the conditional examination of the defendant, Hugh Robertson; and,
4. The court abused its discretion in refusing to permit the plaintiff an opportunity to reopen her case and to permit her to clarify the fact that Hugh Robertson was the only man with whom she had sexual relations during the period from the 1st of August, 1964, until the birth of the baby on July 28, 1965, and that she never reconciled with her first husband, John Maney.

Appellant's motion for rehearing was overruled on December 13, 1968, and this appeal followed. The sole assigned error upon appeal is that the court erred in overruling appellant's motion for a rehearing.

As this is an appeal from a negative judgment, appellant's specification that the decision is not sustained by sufficient

evidence presents nothing for our consideration. *Hardy et al.* v. *Town of New Harmony, Indiana, et al.* (1967), 248 Ind. 350, 227 N. E. 2d 689.

Neither, in our opinion, is the court's decision contrary to law. We conclude from the record that, during the natural period of possible conception, appellant was married to one John Maney and that appellant remained married to Maney until she received her divorce from him in March of 1965, approximately four to five months before the child's birth. We find no evidence of record which would indicate less than a full term pregnancy, and counsel did not so contend. In such instance we must presume the legitimacy of the child as it was conceived during the time in which appellant was married to Maney. The presumption of legitimacy is one of the strongest known to the law and is for the protection of the child. At common law the presumption was conclusive, but today it is considered subject to rebuttal. In *Pursley* v. *Hisch* (1949), 119 Ind. App. 232, at page 237, 85 N. E. 2d 270, at page 272, this court stated:

"The modern trend is away from the rule of conclusiveness, which has sometimes achieved nonsensical results, and toward a sane and reasonable ascertainment of the facts. *In re Findley* (1930), 253 N. Y. 1, 170 N. E. 471, per Cardozo.

"In a proceeding of this kind we think the presumption or inference, although it is one of the strongest known to the law, is susceptible of being rebutted. See *Roth* v. *Jacobs* (1871), 21 Ohio St. Rep. 646. We are of the opinion however, that such can only be done by evidence which is *direct, clear and convincing. Evans* v. *State ex rel. Freeman, supra.*" (Emphasis supplied.)

Also, in *Whitman* v. *Whitman* (1967), 140 Ind. App. 289, at page 292, 215 N. E. 2d 689, at page 690 (Transfer denied),[1] this court stated:

"However, the modern law has relaxed the obvious severity of this presumption to a limited degree and such pre-

1. See also: *Duke* v. *Duke* (1963), 134 Ind. App. 172, 185 N. E. 2d 478 (Transfer denied); *Phillips* v. *State ex rel.* (1925), 82 Ind. App. 356, 145 N. E. 895.

sumption now may be rebutted by 'evidence which is direct, clear and convincing.' *Pursley* v. *Hisch* (1949), 119 Ind. App. 232, 85 N. E. 2d 270.

"To date, this Court has developed logical exceptions to the presumption of legitimacy. These exceptions are set forth in *Phillips* v. *State ex rel.* (1925), 82 Ind. App. 356, 145 N. E. 895, as follow:

" '* * * the presumption could be overcome by proof that the husband was *impotent;* or that he was entirely absent so as to have had *no access to the mother;* or was entirely absent at the time the child in the course of nature must have been begotten; or was present only under such circumstances as to afford clear and satisfactory proof that there was no sexual intercourse. * * *' "

There is evidence of record which indicates that in August of 1964, appellant and John Maney legally separated and remained separated until the decree of divorce in March of 1965. However, the only evidence in the record, at best, gives rise to merely an inference that Maney had no *access* to appellant. This evidence came in the direct examination of appellant, and the question and answer read as follows:

"Q. Now, from the 20th of November [1964] when you returned from Cody, Wyoming until March the 16th when you left to go back to Wyoming to get your divorce, did you have any dates with any other man other than Mr. Robertson?

"A. No sir."

By the laws of nature and human experience, it is quite possible that conception in this instance could have occurred prior to the 20th of November, 1964. We conclude that appellant has not sustained the burden of establishing by *direct, clear and convincing evidence* that John Maney had no access to her during the period of time in which the experience of man would indicate conception to have occurred in this instance. We, therefore, feel that the decision of the trial court is not contrary to law.

Appellant further argues that the court erred in refusing to admit into evidence the conditional examination of the

defendant, Hugh Robertson. The conditional examination of Hugh Robertson was taken under oath and properly notarized. Defendant's counsel objected to introduction of the document by reason of Mr. Robertson's presence in the court room. The court sustained the objection and refused the introduction.

Appellant asserts that she was prejudiced by the court's ruling. Without passing upon the question of admissibility, it is sufficient to state that had the document been admitted in evidence, the testimony contained therein would have done considerable harm to appellant's case, and the court's ruling in excluding the same in no way prejudiced appellant. We call attention to the following questions and answers as contained in the conditional examination of Robertson:

"Q. Hugh, have you thought of any other reasons why you feel you are not the father of this child?
"A. Yes.
"Q. What are those?
"A. That her first husband was back in the later part of October or the first part of November and other information that my attorney has.

* * *

"Q. It was then you discovered her husband, her first husband, was in Peru. I take it Peru. Was that what you were referring to, Peru?
"A. Yes.
"Q. How did you come to know that?
"A. Patricia told me.
"Q. When did she tell you that?
"A. In October.
"Q. In October of 1964?
"A. Yes.
"Q. How long did she say her first husband was in town?
"A. I believe it was the middle part of one week that he would be there through the weekend.
"Q. She expected him to be in town then for about four or five days?
"A. Right.

"Q. And this would have been the later part of October, 1964?

"A. Yes or maybe into the first part of November, I don't remember exactly.

"Q. Now what other information do you have which indicates to you that somebody else . .

"A. Just general conversation.

"Q. Let's apply this general conversation. Whose conversation is it?

"A. Well her second husband actually had admitted that it was his child.

"Q. Second husband, what was his name?

"A. Richard Gallio.

"Q. Did you ever meet Mr. Gallio?

"A. Yes.

"Q. When did you first meet him?

"A. I met him when he first came to Bunker Hill Air Force Base. He played in the band there. It was (T)he first part of the year of 1964, I believe. It could have May of 1964. Somewhere in that period of time.

"Q. Did you know whether or not at that time that he knew Patricia?

"A. Yes he knew Patricia.

"Q. How did he come to know her in that May of 1964?

"A. I'm not saying he knew her then. I don't know but afterwards, he was in a band which we all went to see, at the same place.

\* \* \*

"Q. Who did Gallio admit to that he had had relations with Patricia about the time of her pregnation?

"INTERRUPTION BY MR. BOLINGER

"I believe Mr. Robertson stated that Mr. Gallio admitted being the father of the child. Do you understand the question.

"Q. Did you say that Gallio had stated that he was the father of Patricia's child?

"A. Yes.

"Q. All right who did he indicate this to?

"A. Various people in Peru.

"Q. Who?

"A. One was one of the first people was Mike Johnson, Jim Schroll, Jackie Ingle, a lot of different people have told me this when I was in Peru after I moved back up here."

The testimony above tends to show that appellant could have had access to her first husband during the time of possible conception of the child. Likewise, there is reference to admissions of paternity by appellant's second husband. As appellant has demonstrated no prejudice in the court's ruling, we conclude that said ruling did not constitute reversible error.

Finally, appellant contends that the trial court abused its discretion in refusing her request to reopen the case and submit further evidence that her former husband, John Maney, could not have been the father of her child. The record reveals commentary of counsel and court surrounding the request, which reads as follows:

"MR. BOLINGER. * * *
I know the record will bear me out as to what the questions were and what her answers were on that point. She simply said I had sexual relations with Hugh Robertson, and there was no statement as to whether she did or didn't with her husband. The presumption is that she did and it has not been overcome.

"MR. HARRIGAN. Well, Your Honor, I would like to call Patricia Miller to clarify this matter.

"BY THE COURT: You're just a wee bit late, don't you think? After the plaintiff rests, there was a motion for a finding for the defendant. You can't then repair it by opening the case. I'm sorry. Once the plaintiff rests, the defendant has the right to make a motion for a finding on the basis of the evidence that has been introduced. And then if counsel suddenly discovers something, it's too late. I will take this matter under advisement because there are some questions, part of which can be answered by minute examination of the record. I have taken, as I always do, rather careful notes, but I would not want to depend on that. So I am going to have the record, so far as pertinent parts of it at least, transcribed and examined, and in the meantime, Gentlemen, if you wish to give me any further

authorities, I will appreciate it. As to what I said about the reopening of the evidence, there would be very little point in having a motion for a finding if you could do that. However, if you can furnish me some authorities showing that, I will be glad to consider them."

In support of her contention that the trial court abused its discretion in refusing the request to reopen, appellant cites as authority this court's decision in *Sanders* v. *Ryan* (1942), 112 Ind. App. 470, 41 N. E. 2d 833 (Transfer denied), in which we held that the trial court abused its discretion in similar circumstances.

In *Sanders,* the plaintiff-appellant filed a verified motion for leave to reopen the case to submit further evidence. In that case, the motion which was presented to the court stated specifically the name of the witness which the appellant there intended to call and a detailed explanation of the testimony which the appellant expected to elicit from the witness. The motion in *Sanders* explicitly stated that further testimony could be submitted without inconvenience to the defendant.

In a prior Supreme Court decision, *Working* v. *Garn et al.* (1897), 148 Ind. 546, 47 N. E. 951, it was held that where a party attempts to reopen a case to submit further evidence, there is a presumption that said party was not diligent in procuring the evidence at trial. Absent a showing sufficient to overcome the presumption, the trial court had not abused its discretion in overruling the motion. The *Working* case was not followed in *Sanders, supra,* and the denial of transfer by our Supreme Court in *Sanders* appears to overrule *Working, supra,* by implication.

However, in the case at bar, we do not feel that the trial court was sufficiently apprised of appellant's intentions as was the court in *Sanders.* Likewise, in the case at bar the court gave appellant an opportunity to brief the matter of reopening the case. We find no instance of record in which appellant ever attempted to brief the question or to apprise the court of her intentions by way of a detailed offer

to prove. Under such circumstances we cannot hold that the court abused its discretion in refusing appellant's request to reopen the case.

For the foregoing reasons, the judgment of the Howard Circuit Court should be affirmed.

Judgment affirmed. Costs taxed against the appellant.

Lowdermilk, C.J., Cooper and Sullivan, JJ. concur.

NOTE.—Reported in 258 N. E. 2d 420.