RACHEL C. LARKIN v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

Ordinance: Parol Proof of Publication is admissible as primary evidence.

SAME: FOUNDATION FOR SECONDARY EVIDENCE. Such proof is admissible as secondary evidence when it is shown that the ordinance was passed in a certain year, that all ordinances passed that year were published in a certain paper, that its files for that year are lost and can not be found upon reasonable search, and that nó proof of publication is on file with the recorder.

Construction: Instruction. To charge that an ordinance existed at a certain time, and that it was not,then binding unless published, is not conflicting nor misleading. It simply deals with "ordinance" as the act of the council, as distinguished from a legal ordinance, which does not exist without publication.

Submitting Question of Publication to Jury: HARMLESS ERROR. It is harmless error to submit to the jury whether an ordinance was published. While that question is for the court, it passed upon it in admitting the ordinance in evidence.

Practice: What is "Conflicting Evidence." One may be entitled to go to the jury, though he offer all the evidence, if some of it is for and some against him.

Second Appeal: Res Adjudicata. A decision on one appeal is the law on subsequent ones.

*Appeal from Cedar District Court.*—Hon. J. D. Giffin, Judge.

Saturday, October 6, 1894.

Action for personal injury alleged to have been caused by negligence in the operation of defendant's train. Judgment for plaintiff, and the defendant appeals.—*Affirmed.*

*S. K. Tracy* and *Wheeler & Moffitt* for appellant.

*Charles A. Clark* and *R. G. Cousins* for appellee.

Granger, C. J.—This cause was once before in this court, and is reported in 85 Iowa, 492, 52 N. W. Rep. 480. The facts are there stated, and need not be repeated here.

I. It will be noticed that the case was before reversed because of an ordinance, limiting the rate of speed of the train through the town of West Liberty, being admitted in evidence without proper proof of its publication to render it valid; the holding then being that in such an action as this the record and authentication as provided by Code, section 492, is not alone sufficient, but there must be proof of the publication as provided in the section. There is no question but that such an ordinance was passed by the town council, and if it was ever published, it was in the West Liberty *Enterprise*, in May, 1874. It is admitted that there is no proof of publication of the ordinance on file in the office of the recorder of West Liberty. One J. W. McHarvey was the owner and publisher of the paper for ten years, commencing February 21, 1874. He testified that "the papers of date May 4, 1874, or covering that date, are missing from the files for probably two years; * * * the files of the paper I kept are destroyed. I think so. I am not sure." E. M. Warner testified: "I live in Muscatine, and was mayor of West Liberty from March, 1886, to March, 1887. I have made search

to find the publication of the ordinance in question in the newspaper, and also made search to find whether it was published in pamphlet form. I have made inquiries of different citizens around there for it. I have made inquiries of a large proportion of the old citizens of the town to ascertain whether they had preserved any files of that paper, or any publication of the ordinance in question. I have searched in the office of the paper for the files of the paper for 1875, but there is no file in the office back of 1878. I have made diligent search for the files of the West Liberty *Enterprise* of 1874, 1875, and 1876, but they are missing from that office." Charles A. Bancroft testified that he is the present publisher of the paper, and that there are no files back of 1878. Upon this showing, secondary evidence of the publication was admitted. The circulation of the paper at the time of the publication was about eight hundred copies, and it is urged that the showing, in view of the number of papers published, is not sufficient to justify the admission of parol proof of the publication of the ordinance. We do not concur in that view. Much importance may be attached to the time that had elapsed since the publication—about eighteen years. In addition to this, the files in the office of publication, where it would most likely be, were so broken that the paper could not be obtained there, and an inquiry of a large proportion of the citizens of West Liberty failed to secure a copy. It is true that a copy might somewhere be found, but it seems to us that inquiry and search have been in the places where reasonable diligence would suggest that they should be, and we think oral proofs of the publication were admissible. And, further, it may be said, on authority, that parol proofs of such a publication are admissible as primary evidence. *City of Des Moines v. Cassady*, 21 Iowa, 570.

II. As to the sufficiency of the oral evidence to show the fact of publication, it is true that no witness

testifies to an independent recollection of the publication of the particular ordinance. But the ordinance was passed by the council, as shown by its records, and the then mayor of the town testifies that, while he does not remember the particular ordinance, he does remember, and he says, "that all the ordinances were published. All the ordinances that were passed during my term of mayor were published in the West Liberty *Enterprise.*" The editor of the paper at the time said: "I published all the ordinances passed by the council after I purchased the paper; probably for all the time I was the newspaper publisher in the town. And I think, if those ordinances were passed at the date stated, it was passed in May, 1874. We published them in the next publication or issue after they were passed. It was the rule that we publish the proceedings of the council and the ordinances as they came from the council, the next publication after they were passed." It seems to us that such evidence does not leave the question of publication open to a reasonable doubt. With nothing to contradict it, it seems quite conclusive.

III. The court in its eighth instruction, submitted to the jury the question of the publication of the ordinance as one of fact, and it is said that such a question is exclusively one for the court. However that may be, as a legal proposition, there is no prejudicial error in the submission of the fact to the jury, because the court, before admitting the ordinance in evidence, must have been satisfied of the fact of publication, and the defendant could not have been prejudiced by requiring the jury to also find the fact before the plaintiff could recover. We are not mistaken in saying that the court so found because the law required it; and, besides, the evidence is such that we may assume such a finding.

91 Ia—42

IV.   The court, in its eighth instruction, speaking of the ordinance, told the jury that it "existed at the time of the accident," and then said, "This ordinance would not bind the defendant corporation, however, unless it had been published." It is said that the instruction is conflicting and misleading, because in one place the jury is told that the ordinance did exist, and in the other that it did not exist unless published.  It is manifest that the court used the term "ordinance" as the act passed by the council, and that, in that sense, it existed when the accident occurred, and stated that to the jury as a fact, and then submitted to it the question of the act becoming binding on the defendant by being published.  The language to us, does not indicate a conflict of statements, nor does it appear to be misleading.

V.   Appellant says: "The pivotal question is whether the negligence of the boy driver, if any, was, as a matter of law, imputable to the occupants of the buggy."  On the other trial in this court, it was held to be a question of fact for the jury, because of a conflict of evidence.  The only witnesses on that point at the former trial were the plaintiff and the liveryman—one Millwood.  On this trial, the same witnesses were used, and their testimony is precisely the same, the record of their testimony on the former trial being read by stipulation, the only difference being this:   That on this trial the plaintiff, instead of the defendant, read the former testimony of Millwood, so that all the testimony on that point on this trial is said to be offered by plaintiff, and that "hence she should be bound by it." It is then urged that the rule of the former opinion should not apply, and that the submission of the question as one of fact to the jury is error.  Evidence is in conflict when from its consideration, as a whole, both the affirmative and the negative of an issue of fact has support from it.  It is not impor-

tant to such a result that a part of the evidence shall be offered by each party to the issue. It happens at times that the party having the affirmative of an issue of fact, with evidence for its support, will himself present testimony to override it, and show the negative of the proposition. In such a case, the testimony is both for and against the proposition, and is in conflict. It is not true that a party is bound by evidence, offered by himself, that may be against him, where there is evidence in his favor that presents a conflict, but in such a case he may have the judgment of the court or jury upon the weight of the evidence. This case, then, is not different from what it was on the former appeal as to there being an issue of fact as to whether or not the negligence of the driver could be imputed to the plaintiff, so as to affect her right of recovery. From the testimony of the plaintiff the conclusion would be that the driver was not under her control or direction; and Millwood, from whom the team and driver were hired, expressly stated that he had no control over the driver, and that ''he was then under the control of the persons in the buggy.'' The record, as to the question under consideration, is not materially changed from what it was on the former appeal, and the rule then announced is applicable now. Having fixed it as the rule of the case on that appeal, we do not consider the correctness of the holding on this appeal. *Windsor v. Cobb*, 74 Iowa, 709; 39 N. W. Rep. 93; *Babcock v. Railway Co.*, 72 Iowa, 197; 28 N. W. Rep. 644, and 33 N. W. Rep. 628; *Heffner v. Brownell*, 75 Iowa, 341; 39 N. W. Rep. 640.

This disposition of the question as to the driver's negligence practically disposes of the other questions as to contributory negligence. The jury, under the instructions of the court, must have found that the plaintiff, independently of the negligence of the driver being

imputed to her, was not guilty of negligence, and the finding has full support in the evidence. The case, upon the point under consideration, is in no essential particular like *Schaefert v. Railway Co.*, 62 Iowa, 624; 17 N. W. Rep. 893; *Shufelt v. Railway Co.*, 55 N. W. Rep. (Mich.) 1013; *Railway Co. v. Stommel*, 25 N. E. Rep. (Ind. Sup.) 863, or other cases cited. Appellant refers us to *Whittaker v. City of Helena*, 35 Pac. Rep. (Mont.) 904, where it is held that the negligence of the owner and driver of a private conveyance is imputable to one who is voluntarily riding with him, and the latter can not recover damages for negligence to which the former contributed; also, to *Mullen v. City of Owosso*, 58 N. W. Rep. (Mich.) 663. We need not discuss the correctness of the rule announced, because, with our conclusion that there is no change in the evidence as to that particular branch of the case, the former holding that it was a question for the jury, must obtain on this trial. The judgment must be AFFIRMED.