## G. E. POWERS v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

**Evidence:** SPEED OF TRAIN: COMPETENCY OF WITNESS. Witnesses of average intelligence, having knowledge of time and distance, and who saw a passing train at the time of an accident, are competent to testify to its rate of speed.

**Same:** ADOPTION OF ORDINANCES. The testimony of the town clerk that a record book of the council offered in evidence showed the proceedings relative to the passage of a speed ordinance was competent for the purpose of identification. It was also competent for him to state that the ordinance was signed by the mayor and published according to law.

**Railroads:** CROSSING ACCIDENT: CONTRIBUTORY NEGLIGENCE: EVIDENCE. Where the evidence in an action for a railroad crossing accident conclusively established the fact that had plaintiff looked when nearing the track he could have seen the approaching train and avoided the injury, his testimony that he did so look presented no such conflict in the evidence as to require submission of that issue.

**Same.** One driving upon a railroad crossing knowing that a train was due about that time, without looking to see if it was approaching, was guilty of contributory negligence as matter of law.

**Same:** NEGLIGENCE: SUDDEN EMERGENCY. Where an emergency arises through the negligent act of the injured person he can not recover; as where he neglected to look for an approaching train upon nearing the crossing, until within the zone of danger, when his team was frightened and he was thus prevented from discovering his peril.

**Same:** LAST CLEAR CHANCE. Where the engineer of a train saw plaintiff approaching the crossing but supposed he would exer-

cise reasonable care and not drive onto the track ahead of the train, but when discovering he did not intend to stop it was too late to prevent the accident, the doctrine of last clear chance has no application.

*Appeal from Hardin District Court.*—HON. C. G. LEE, Judge.

TUESDAY, JUNE 25, 1912.

SUIT to recover damages occasioned by one of the defendant's trains. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Geo. W. Seevers* and *W. H. Bremner* and *E. P. Andrews,* for appellant.

*Lundy, Wood & Baskerville,* for appellee.

SHERWIN, J.—The defendant's railroad track intersects the main street of the town of Liscomb at about right angles; its depot being on the north side of the street and west of its line of railway where they intersect. The plaintiff was driving west on Main street, and was struck on this crossing by a freight train coming from the south. One of the grounds of negligence alleged was that defendant was running its train at a rate of speed prohibited by an ordinance of the town, and at an unreasonable and dangerous rate of speed. The ordinance in question made it unlawful to run a train within the town at a greater rate of speed than eight miles per hour.

The defendant objected to the testimony of witnesses as to the speed of the train immediately before it struck the plaintiff, and now insists that such testimony was incompetent, because sufficient foundation therefor had not been laid. The witnesses examined on this question showed that they

1. EVIDENCE: speed of train: competency of witness.

were men of average intelligence and observation, having knowledge of time and distance, and that they saw the train at the time in question.   We think their testimony was competent.   *Ressler v. Railway Co.*, 152 Iowa, 449; *Omaha St. Ry. Co. v. Larson,* 70 Neb. 591 (97 N. W. 825); 8 Century Dig. 492.

J. B. Sweet was clerk of the town of Liscomb when the ordinance regulating the speed of trains was passed, and he testified for the plaintiff that he was present at the meeting of the council when the ordinance

2. Same: adoption of ordinances.

was finally passed.   He was then asked whether the record book showed the proceedings of the town council of the incorporated town of Liscomb with reference to the passing of Ordinance No. 20 (the ordinance in question).   The defendant's objection, because the book itself was the best evidence of what it contains, was overruled.   Of this complaint is made.   This testimony was competent for purposes of identification. But, even if defendant's theory were correct, the ruling was not prejudicial, because the book itself, so far as material, was in evidence.

Objection was also made to Sweet's testimony that the ordinance was signed by the mayor during his term of office in 1903, and to his testimony that the ordinance was published by posting notices.   Objection was also made to the ordinance itself.   All of this testimony, and the ordinance itself, was in our judgment competent.   It was clearly competent to show by parol that the ordinance was properly signed by the mayor, and that the ordinance was published in accordance with the requirements of the statute.   *City of Des Moines v. Casady,* 21 Iowa, 572; *Larkin v. Railway Co.,* 85 Iowa, 502, and *Id.,* 91 Iowa, 655; *Bayard v. Baker,* 76 Iowa, 220.

The appellant moved for a directed verdict on the ground, among others, that it conclusively appeared that plaintiff was guilty of contributory negligence, and it

is now insisted that the motion should have been sustained.

3. RAILROADS: crossing accident: contributory negligence: evidence.

The plaintiff had lived in the neighborhood of Liscomb for many years. He was thoroughly familiar with the crossing in question, and knew that a freight train was due in Liscomb from the south at about 8 o'clock in the morning, the time that he was struck. From a point eight or ten rods east of the crossing, there was an unobstructed view of the defendant's track south for, at least, a half a mile. The plaintiff says that he was approaching the crossing at a trot, and that at a point eight or ten rods east thereof he glanced down the track, but saw no train. He further testified that his horses continued to trot toward the crossing, and that, when about two or three rods east thereof, the team that he was leading became frightened at something, and started north around the end of the wagon that he was in; that at that time he attempted to again look south for a train, but was unable to do so, because of the action of his team. He further says that, when the team he was leading started up, the other team also started, and that he had difficulty in controlling both; that the team that he was driving carried him onto the track just ahead of the defendant's engine; and that he then, for the first time, knew of the presence of the train. During all of the time that plaintiff was approaching this crossing, he sat on a seat with his back to the south, the direction from which the train in question was due at that time. If this train was running at the highest speed claimed by the plaintiff, fifteen miles per hour, and the plaintiff was approaching the crossing with his horses on the trot, which would be at the rate of not less than five miles per hour, it is perfectly apparent that the train could not have been over thirty or forty rods south of the crossing when the plaintiff was at the point eight or ten rods east thereof, where he says he looked for the train. The plaintiff's eyesight and hearing were good at that time. We think the plaintiff's own evi-

dence demonstrates that he did not look for the train at any point while he was approaching the crossing. True, he says he did, but when it is shown beyond any question that, if he had looked, he could not have failed to see the train, there is no conflict in the evidence which will take the case to the jury. *Reeves v. Dubuque & S. C. Ry. Co.,* 92 Iowa, 35; *Bloomfield v. Railway Co.,* 74 Iowa, 607.

The plaintiff drove toward a known danger with his back toward the source of such danger. He never looked for a train, though he knew that one was due at about that time, nor did he attempt to look until the action of his horses indicated that they had discovered an approaching train, and even then he did not take the trouble to know whether it was a train or something else that had frightened his horses. He was approaching a railroad crossing with two separate teams in charge, without paying the least attention to the danger that is always present at such a place, and we think he was guilty of contributory negligence as a matter of law. The case falls within the rule announced in *Wilson v. R. Co.,* 150 Iowa, 33; *Rietveld v. Railway Co.,* 129 Iowa, 249; *Crawford v. Railway Co.,* 109 Iowa, 433; *Swanger v. Railway Co.,* 132 Iowa, 32; *Artz v. Railroad Co.,* 34 Iowa, 153.

4. Same.

This is not a case where the plaintiff's attention was momentarily diverted so that he did not realize the dangerous position he was in. He testified that he had just started to look for the train as the team behind the wagon started around the end thereof, and that he was prevented from looking by the unexpected action of both teams. It was an emergency, then, that prevented his looking for the train at the point two or three rods from the track, and this emergency was undoubtedly caused by his own negligent act in driving so close to a dangerous place without looking for the train. It is a general rule that, where an emergency is brought about by the person injured negligently

5. Same: negligence: sudden emergency.

placing himself in a position of peril, he can not recover. 29 Cyc. 522, and cases cited.

Appellee's contention that the doctrine of last clear chance should be applied here can not be sustained. The engineer did see the plaintiff when he was eight or ten rods

6. SAME: last clear chance. east of the track, it is true, but he had the right to suppose that plaintiff would exercise reasonable care and not drive onto the track ahead of the train, and, when he discovered that he did not intend to stop, it was then too late to prevent the collision. *Wilson v. Illinois Central R. Co., supra.*

For the reasons pointed out, the court should have directed a verdict for the defendant. The case is therefore —*Reversed.*