CARRIE DUGGAN, Administratrix, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY et al., Appellees.

**RAILROADS:** Accidents at Crossings — Contributory Negligence.
1   One who, for a distance of more than 500 feet, with his back partly towards a train, drives straight towards and upon a well-known crossing and in front of said train. which he might have seen for three quarters of a mile distant, and which he knew was about due to pass, without taking any precautions as to the train, is *per se* guilty of contributory negligence.

**NEGLIGENCE:** Last Clear Chance—Accident at Crossing—Stopping
2   of Train. The doctrine of "last clear chance" has no application when plaintiff's peril was actually discovered at a time when no possible time remained in which to stop the train or sufficiently reduce its speed to avoid the accident.

**ACTIONS:** Joint Actions—Negligence—Right to Recover of One
3   Only. Recovery may be had against one only of two jointly charged with negligence. Secs. 3465, 3639, Code, 1897.

*Appeal from Jones District Court.*—WILLIAM N. TREICH-
LER, Judge.

SATURDAY, SEPTEMBER 23, 1916.

REHEARING DENIED SATURDAY, MAY 12, 1917.

SUIT to recover damages for injuries to plaintiff's dece·
dent. Verdict directed for defendant. Plaintiff appeals.—
*Affirmed.*

*W. J. Ainsworth* and *Wade, Dutcher & Davis,* for ap-
pellant.

*Cook, Hughes & Sutherland* and *Herrick & Rhinehart,*
for appellees.

SALINGER, J.—I.   Neither side claims anything for the
equipment of the train.   In fact, plaintiff makes it a ground
for argument that defendant was negligent because the
brakes and other equipment were such as would have en-
abled defendant to stop in time to save decedent from in-
jury.   It is, however, claimed that the fireman was negli-
gent; that defendant was, because:   For a long distance
before reaching the crossing at which decedent was killed,
the track runs on a down grade; the train was running at
a high rate of speed, to wit, 35 miles an hour, on its own
momentum, without the use of steam, and without being
under sufficient control; the employees had notice of this
rate of speed 15 or 16 seconds before the collision, and at
this time, the horse was jogging along about 6 miles an
hour, going directly towards the crossing, and the buggy
rattling over frozen earth; they failed to give proper sig-
nals of the approach of the train, though the trainmen knew
decedent was about to go upon the crossing, in ignorance
that the train was approaching; the fireman knew
that the wind was blowing strongly from the south and,
therefore, should have inferred that decedent would natural-
ly not hear the train; and there was negligence in failing to
apply the brakes.

There is no evidence that employees knew that decedent was about to go on the crossing in ignorance that the train was approaching, and it is manifest that men on a moving freight train were not in position to know that a buggy some distance away was rattling over frozen earth. There is a conflict on whether the bell was rung; but, as a verdict was directed against plaintiff, this conflict does not avail defendant in sustaining the direction. As we view it, the failure to ring the bell or give other signals just before decedent got to the crossing is of no great importance, because it appears without dispute that a whistle was blown at a point some little distance from this crossing, which was heard by persons in a worse—at least not in a better—position to hear it than was decedent, and that the same witnesses heard the noise and rumble of the train. These witnesses say they heard both the whistle and the roar and noise of the train distinctly, and the latter for quite a while, and for quite a distance. One says he could hear the train all the way down, and all the time until it stopped, after having injured decedent, and this witness was never closer to the train than 200 yards. This, in a manner, disposes, too, of the claim that the fireman could have anticipated that decedent would not hear the noise of the train.

As the case turns on whether the allegation that decedent was free from contributory negligence has any proof to support it, we have no occasion to go exhaustively into the claim that defendant was negligent.

II. Duggan and his companion drove straight towards this crossing for over 500 feet. Decedent had passed over the crossing frequently for many years. He had lived within 30 or 40 rods from the track for more than 20 years. The train that injured him had been running from 12 to 15 years. It was a little late that morning, but this was quite usual. Decedent drove straight towards this crossing for

1. RAILROADS:
   accidents at
   crossings: con-
   tributory neg-
   ligence.

more than 500 feet.   There are no trees or other obstructions
to hide the view of the track or crossing on the road over
which decedent drove.   There were a number of points on
that road at which, owing to the angle of the right of way,
the train could be seen before it reached the crossing.   Sev-
eral, in no better, if as good, position, did see it.   As to the
claim that, because of this angle, the back of the buggy was
towards the train, that called for more, rather than less,
care.   At any rate, *Powers v. Iowa Cent. R. Co.,* 157 Iowa
347, seems to rule this case, and it included the element of
driving with one's back towards the train.

Appellant argues that it is conceded that the top of
the buggy was up, and the side curtains on in such posi-
tion that those in the buggy could not see out either side
without leaning forward and looking around the side of
the curtain; that the top was in such position that the side
curtains excluded the view of the inmates on either side,
and, it is said, of course, excluded the noise.

This concession goes beyond the proof.   But if it is
to be taken, then Duggan proceeded to the crossing under
conditions, which he could have changed, that made it
either difficult or impossible for him to see, and impossible
for him to listen.

Carl Owen, who was in the buggy, says, however, that
the top was only half way up at the time they were hit,
but that the side curtains were in such position that they
could not see without leaning forward, and through the
side; that they would have had to lean forward in order to
see a train, and to raise up the top; and that, if Duggan
had turned his head around and got it between the bow of
the buggy, he could see the train three quarters of a mile
from the crossing, and could see it at any place while driv-
ing on the highway; and appellee contends that the top of
a buggy half way up is such a small hindrance to seeing
out that it cannot be said to be an obstruction at all.   Carl

Owen says he didn't see Duggan look around back of the top of the buggy at any time; nothing was said as to the train, though they were talking as they drove; the lines were loose, the horse trotting at 6 or 7 miles an hour, which speed was continued up to within 2 or 3 rods of the track; the horse then broke into a gallop, but didn't appear to be at all scared. It was in the habit of breaking from a trot into a lope, and when it did it on this occasion, Duggan just let it gallop for a little way, and, when they were just about on the track, he just straightened the lines and didn't try to check up before looking back; and when he first leaned out of the side of the buggy curtain, they were on the track, or very nearly, and they were hit about the time Duggan looked out and around the side of the top. Neither he nor Duggan looked around the side curtains to see whether a train was coming or not; the first Owen knew of a train was just as they got right on the track, and he then saw Duggan lean forward and look back, and at the same time Owen slapped the horse with the lines, and said "Get up," and they were struck in the same instant. He makes the remarkable further statement that at this time he heard no sound of the train.

III. We will not indulge in an investigation of the claim that, on a mathematical demonstration, the fireman is mistaken, if not worse, as to the distance his train was from the crossing when Duggan was last seen. We find nothing to justify the hostile criticism of the witness; and, as he was testifying as a witness for plaintiff, the latter is in no position to say that this witness is a falsifier.

2. NEGLIGENCE: last clear chance: accident at crossing: stopping of train.

It is the undisputed evidence that, if this train had been stopped within 800, or even 900, feet after notice that it needed to be stopped, it would be a good stop, and above criticism. Appellant himself presents that the employees had notice but 15 or 16 seconds before the collision.

Roughly, in that 15 or 16 seconds, the train ran but 500 feet. Moreover, it is the undisputed evidence that, when Duggan was last seen, he was not over 30 or 40 feet from the track, and the engine, 2 or 3 rods away. Something is said that the train might easily have been stopped, or sufficiently slowed down to avert the injury. It is apparent, on the face of things, that it was much easier to stop the horse and buggy, even when it was but 30 or 40 feet from the crossing, than it was to stop this train, going at 35 miles an hour, in a distance of 2 or 3 rods. The case seems fairly within the case of *Landis v. Interurban R. Co.*, 166 Iowa 20, and *Powers v. Iowa Cent. R. Co.*, 157 Iowa, at 350, in which we hold that the doctrine of the last clear chance has no application. See *Oaks v. Chicago, R. I. & P. R. Co.*, 174 Iowa 648.

IV. This is a joint action. Appellee **3.** ACTIONS: joint actions: negligence: right to recover of one only. says it is conceded that no case is made against the engineer under the doctrine of subsequent negligence, because the engineer knew nothing of the presence of Duggan until after he was struck. Upon this, it asserts that, as no joint negligence is, therefore, proven, the case should be affirmed on the ground alone that, if suit is predicated upon a joint action, no recovery can be had unless against all the defendants—citing 31 Cyc. 707, and 22 Encyc. Pl. & Pr. 585. That is not the rule in this court. *State v. McAninch*, 172 Iowa 96.

Because decedent was not free from contributory negligence, the judgment must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.