### HOOLEY *v.* HOOLEY.

[No. 20,593. Filed May 22, 1967. Rehearing denied June 28, 1967. No Petition to transfer filed.]

*James E. Keating,* of South Bend, for appellant.

*Husted and Husted,* of Crawfordsville, for appellees, Mark Alan and Roger Hooley, and *James D. Harrison* and *Boyce, Harrison, Moberly* and *Wallace,* both of Indianapolis, for appellee, Driftwood Homes Corporation.

## APPEAL FROM THE FULL INDUSTRIAL BOARD OF INDIANA.

FAULCONER, Judge.—Appellant prosecutes this appeal for a review of an award of a majority of the Full Industrial Board of Indiana, one member not participating, denying compensation to Diana Kay Hooley. The pertinent part of the finding we are asked to review reads as follows:

> "It is further found that the said minor plaintiff, Diana Kay Hooley, born posthumously on October 13, 1965, was not an acknowledged illegitimate child of the said decedent at the time of his said accidental injuries and death; . . . ."

Acts 1963, ch. 387, § 10, p. 1025, § 40-1403a, Burns' 1965 Replacement, provides, in part, as follows:

> "The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in the preceding section:
>
> \*   \*   \*   \*   \*
>
> "(d) An unmarried child under eighteen [18] years upon the parent with whom he or she may not be living at

the time of the death of such parent, but upon whom, at such time, the laws of the state impose the obligation to support such child.

\* \* \* \* \*

"As used in subsections (c), (d), (e) and (f), the term 'child' shall include . . . posthumous children and acknowledged illegitimate children. . . ."

The award of the Board cannot be set aside in this case unless all the evidence is undisputed and not contradicted and leads inescapably to the sole conclusion that the appellant was entitled to an award under the Workmen's Compensation Act. *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 686, 77 N. E. 2d 116.

The sole issue here, and which the Board decided in the negative, is whether appellant-minor was the acknowledged illegitimate child of the decedent.

We will not reverse the award of the Full Board if the award is sustained by sufficient evidence of probative value or reasonable inferences therefrom. *Shaffer* v. *Indiana Gas and Chemical Corporation* (1965), 137 Ind. App. 471, 209 N. E. 2d 919, 6 Ind. Dec. 255; *C. & E. Trucking Corp.* v. *Stahl* (1964), 135 Ind. App. 600, 604, 181 N. E. 2d 21, (Transfer denied); *Stoner* v. *Howard Sober, Inc.* (1958), 128 Ind. App. 371, 379, 149 N. E. 2d 121.

Appellee, Driftwood Homes, argues that it must first be determined if the statute (§ 40-1403a, *supra*) contemplates the inclusion of posthumous illegitimate children, and consideration must be given to the fact that the term "child" as used in our statutes ordinarily imports legitimacy. Appellee then quotes from *McDonald* v. *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* (1896), 144 Ind. 459, 43 N. E. 447, 32 L. R. A. 309, and concludes with the statement, "[i]t could, therefore, be fairly assumed that the term posthumous children refers to posthumous legitimate children."

To our knowledge the question of whether or not the definition of "children" contained in § 40-1403a, *supra*, in-

cludes a posthumous illegitimate child has never been decided by this court or the Supreme Court of Indiana.

We are of the opinion that it does. Similarly worded statutes have been so interpreted in other States. *Jeromis* v. *Alvinherb Realty Corporation* (1945), 269 App. Div. 801, 55 N. Y. S. 2d 109; *Patterson* v. *Liberty Mutual Insurance Company* (1964), 110 Ga. App. 23, 137 S. E. 2d 549, 550; *Morgan* v. *Susino Const. Co.* (1943), 130 N. J. L. 418, 33 A. 2d 607, 610.

Such an interpretation is, in our opinion, in conformity with, and in furtherance of, the spirit and purpose of the Workmen's Compensation Act as announced in all of the decisions of this court and our Supreme Court. *Fogle* v. *Pullman Standard Car Mfg. Co.* (1962) 133 Ind. App. 95, 100, 173 N. E. 2d 668, (Transfer denied).

The only evidence introduced at the hearing was by witnesses produced by the appellant.

It appears from such evidence that the decedent was killed on June 3, 1965, and that appellant, Diana Kay Hooley, was born on October 13, 1965. Appellant, Rosie Wilson Hooley, testified that she and the decedent lived together at 1636-½ South William Street, in South Bend, Indiana, from October, 1964, to January, 1965. That in January, 1965, she and decedent moved to 10561 Curtis Street, in Osceola, Indiana, where they continued to live until decedent's death, and that she lived there until July, 1965. She further testified that during all of this time she was lawfully married to one Bradley Wilson, and that two children of her and Bradley Wilson lived with her and decedent and that she and Bradley Wilson were separated during this time. Appellant also produced as witnesses, in Diana Kay Hooley's behalf, the owners of the properties which she and decedent rented; the wife of a fellow employee of decedent; Rosie's grandmother; and Rosie's sister to prove the issues that decedent and Rosie lived together, that Rosie was pregnant with child, that decedent

was the father of Diana Kay Hooley, and that decedent acknowledged such fact.

The burden of proving that Rosie's child, born on October 13, 1965, was the illegitimate child of the decedent and that such child was acknowledged by decedent as his own was upon the appellant.

To our knowledge this is the first time this court, or our Supreme Court, has been called upon to review an award of the Industrial Board under these facts. However, the issue of legitimacy, the presumption of legitimacy and evidence sufficient to rebut it have been before both courts, and the general principles therein set forth are applicable to our review of this award of the Industrial Board.

> "The policy of the law is to presume that a child is legitimate, and he is presumed to be so until the contrary is shown." 5 I. L. E., *Children Born Out of Wedlock*, § 2, p. 141; 9 Wigmore, *Evidence*, § 2527, p. 448 (3d ed., 1940).

> "It has been said that the law presumes that every child in a Christian country is prima facie the offspring of a lawful, rather than of a meretricious, union of parents, . . ." 10 Am. Jur., 2d, *Bastards*, § 10, p. 850.

The modern doctrine and the one which has been adopted in this State, is that the presumption of the legitimacy of a child born during marriage is not conclusive and the trend is toward a sane and reasonable ascertainment of the facts. *Pursley* v. *Hisch* (1949), 119 Ind. App. 232, 237, 85 N. E. 2d 270. 5 I. L. E., *Children Born Out of Wedlock*, § 2, p. 142.

> "While the presumption that every child born during wedlock is legitimate is one of the most firmly established principles of common law, such presumption is not conclusive and may be rebutted." *Duke* v. *Duke* (1963), 134 Ind. App. 172, 174, 185 N. E. 2d 478 (Transfer denied).

However, such evidence to rebut the presumption must be direct, clear and convincing. *Whitman* v. *Whitman* (1966),

140 Ind. App. 289, 215 N. E. 2d 689, 690, 8 Ind. Dec. 188, ▪ (Transfer denied); *Duke* v. *Duke, supra; Pursley* v. *Hisch, supra.* 5 I. L. E., *Children Born Out of Wedlock,* § 2, p. 142, *supra.*

Judge Mote, speaking for this court in *Whitman* v. *Whitman, supra,* at page 690 of 215 N. E. 2d, page 190 of 8 Ind. Dec., stated:

> "To date, this Court has developed logical exceptions to the presumption of legitimacy. These exceptions are ▪ set forth in *Phillips* v. *State ex rel.* (1925), 82 Ind. App. 356, 145 N. E. 895, as follows:
>
> " ' . . . the presumption could be overcome by proof that the husband was *impotent;* or that he was entirely absent so as to have had *no access to the mother;* or was entirely absent at the time the child, in the course of nature, must have been begotten; or was present only under such circumstances as to afford clear and satisfactory proof that there was no sexual intercourse. . . .' (Emphasis supplied.)" See also: 10 Am. Jur., 2d *Bastards,* § 20, pp. 859-60.

As stated above, the only testimony submitted was on behalf of the appellant. Other than certain exhibits appellees submitted no evidence. There is no dispute that appellant, Rosie Wilson Hooley, was living with the decedent and that she was pregnant at the time of his death. The evidence is also undisputed that the landlords and friends believed them to be husband and wife during the time in question. Appellant introduced decedent's 1964 Federal Income Tax Return showing that he listed Rosie as his wife; a group insurance policy of decedent listing Rosie as beneficiary; and Diana Kay Hooley's birth certificate listing decedent as the father. Several witnesses testified that Rosie was going to have a baby. The only direct evidence of acknowledgment by decedent was brought out on cross-examination. One of appellant's witnesses, on direct examination, testified that Rosie, in the presence of decedent, said she was going to have a baby. However, on re-cross-examination this witness stated, "I said Rosie is going to have a baby, he [decedent] said yes." Rosie's grandmother testified, on direct examinaton, that she

talked with Rosie and decedent the Tuesday before he was killed and decedent said Rosie was going to have a baby and that he wanted "to make sure she has money to take care of them." On cross-examination this witness admitted that actually what was said, and all that was said, was that Rosie was going to have a baby by decedent. Rosie's sister testified that she and decedent discussed the fact that Rosie and he were going to have a baby. On cross-examination this witness testified that Rosie told her she was going to have a baby and decedent agreed, and that he "wanted to support the baby well."

> "The statute [Acts 1901, ch. 126, § 1, p. 288, § 6-2309, Burns' 1933 Repl.] does not fix any method or standard by which a putative father may acknowledge his illegitimate offspring, but has left the fact of such acknowledgment to be established by evidence in each particular case, as any other fact is established." *Townsend* v. *Meneley* (1906), 37 Ind. App. 127, 132, 74 N. E. 274 (Transfer denied).

On the issue of acknowledgment, our courts have held in cases under our inheritance statutes, prior to the 1953 Probate Code, that the proof of acknowledgment therein required must be "definite, certain and unequivocal." *Horner* v. *Boomershine* (1928), 88 Ind. App. 57, 61, 161 N. E. 641; *Franklin* v. *Lee* (1902), 30 Ind. App. 31, 44, 62 N. E. 78.

On the issue of non-access of Bradley Wilson, the husband of Rosie, during the time in question, the evidence in our opinion is not so clear and convincing as to cause a reversal. It is not such that reasonable minds could only conclude therefrom that the presumption of legitimacy was rebutted.

> "The modern doctrine, and the one which has been adopted in this state, is that the presumption of the legitimacy of a child born during a marriage may be rebutted by evidence that the husband could not have had access to the mother at the time when the child must in the course of nature have been begotten."

*Pilgrim* v. *Pilgrim* (1947), 118 Ind. App. 6, 12, 75 N. E. 2d 159 (Transfer denied).

Bradley Wilson stated that he did not have sexual intercourse with Rosie since September 6, 1964. He further testified that he lived with his parents in Elkhart, four miles from where Rosie *now* lives. He admitted sexual intercourse would have been possible "if she was willing", and he recalled some "twenty to twenty-four times" he had been around his wife without having sexual intercourse with her since she left him in September of 1964. Rosie, on the other hand, testified, on cross-examination, that "from the time I moved in with Maurice [decedent] to the time he got killed I never seen [saw] Bradley [Wilson] until the day he[decedent] got killed." Appellee introduced two complaints for absolute divorce filed by Bradley Wilson against Rosie Wilson into evidence. In one, filed March 30, 1965, Bradley Wilson alleged that he and Rosie Wilson separated on January 1, 1965; and in the latter one, (summons was served on Rosie Marie Wilson on January 18, 1966) he alleged that they separated September 30, 1964. Rosie also testified that she had been in the home of Bradley's "folks", but she had never seen him during the time in issue.

The appellant strongly contends, both in her brief and at oral argument, that the evidence and legitimate inferences therefrom is undisputed and without conflict that the decedent was the father of Diana Kay Hooley, and that he acknowledged her as such. However, there is direct conflict in the evidence, as well as inferences to be drawn therefrom, on exactly where Bradley Wilson lived during the period of time involved, whether he saw Rosie during this time, and the possibility, as well as the fact, of sexual intercourse between Rosie and her husband during the time of their separation, among other issues important in this cause.

Although both Rosie and Bradley Wilson directly denied sexual intercourse during the time Diana Kay Hooley could

have been conceived, the fact of legitimacy should be determined from a consideration of all of the evidence submitted, giving due weight to all collateral facts that reasonably and naturally affect the value of the testimony. *Evans* v. *State ex rel.* (1905), 165 Ind. 369, 376, 74 N. E. 244, 75 N. E. 651, 2 L. R. A., N. S., 619.

In *A. S. C. Corporation* v. *First Nat. Bank, etc.* (1960), 241 Ind. 19, at page 25, 167 N. E. 2d 460, our Supreme Court said:

"[U]ncontradicted evidence will sometimes support conflicting inferences, and when this is the case, the inferences drawn by the trier of the facts will prevail."

Further, at page 34 of 241 Ind."

" '*Evidence is in conflict* when from its consideration, as a whole, both the affirmative and the negative of the issue of fact has support from it.' *Larkin* v. *Burlington, C. R. & N. Ry. Co.* (1894), 91 Iowa 654, 60 N. W. 195, 196." (Emphasis supplied.)

And, further, at page 35 of 241 Ind.:

"The fact that all of the evidence here was submitted by the plaintiff-appellant, is of no significance in determining its weight.

"The probative value of the evidence in a case depends upon its substance and not upon which party introduces and places it in the record." See also: *Haynes* v. *Brown* (1950), 120 Ind. App. 184, 189-190, 88 N. E. 2d 795.

We have carefully reviewed all of the evidence in this cause, having in mind the purpose, spirit, intent and liberality of construction of the Workmen's Compensation Act. Considered, also, in the light of the limits placed upon this court in reviewing findings of the Industrial Board, we are of the opinion that there is evidence of probative value or legitimate inferences therefrom to support the findings and award of the Board. We cannot say that the evidence is such that reasonable minds could only conclude that the presumption

of legitimacy was rebutted, that the decedent was the father of Diana Kay Hooley, or that he acknowledged her.

What we would have concluded from such evidence had we been the trier of the facts is immaterial in this court on review.

We conclude that the award of the Industrial Board should be affirmed.

Award affirmed.

Carson, P.J., Cooper and Prime, JJ. concur.

NOTE.—Reported in 226 N. E. 2d 344.