DREW, Justice
(dissenting).
I have carefully considered the evidence and testimony before the Judge of Industrial Claims, and have reviewed and considered every reported decision in which the sufficiency of the evidence to support a finding of acknowledgment under similar circumstances was in issue. It is my considered opinion that the evidence appearing in the record in this case does not constitute competent substantial evidence producing a result which accords with logic and reason.[1]
On the issue of whether the child’s mother could have known with any certainty of her pregnancy within four days of fetal conception, the testimony of the treating physician and that of employer’s expert witness was in direct conflict. I do not presume to choose the testimony of one physician over the other. That is not within this Court’s prerogative and is a function for the Judge of Industrial Claims. I note, however, that testimony of the employer’s physician raises substantial doubt about any mother’s ability to recognize her pregnancy within four days of conception.
*368 The treating physician in substance testified that claimant’s mother could have known from positive physical symptoms that she was pregnant within the short time preceding decedent’s death. Granting this possibility, the sum of the testimony of the mother and the decedent’s best friend, considered with decedent’s failure to mention or discuss his fiancee’s possible pregnancy with his roommate and the lapse of more than three years before the assertion of a claim, does not constitute the substantial evidence needed to justify a finding that the decedent actually acknowledged paternity of the child. The testimony on its face, regardless of the demeanor of the witnesses on the stand, is legally insufficient.
The testimony of the mother and decedent’s best friend dealt more with the actions and reactions of the father and his statements of whether the mother was pregnant than with any affirmative statements or actions from which could be implied an acknowledgment that he was the father of any child which the mother was bearing. Describing the decedent’s conversation, his best friend testified that “he [decedent] didn’t know whether she was or not [pregnant]. He said there was a chance she might be.” The mother testified that she could not recall any specific statements wherein decedent expressly acknowledged his paternity of the child. Her recollection was only of the “special treatment” given her because she “might be pregnant.”
In other recorded decisions in which courts have held that acknowledgment was sufficiently proved, the court has usually relied on testimony of persons to whom the deceased employee had expressly acknowledged paternity of the child, or on other circumstances from which a presumption of his acknowledgment of paternity would naturally flow.
In C. F. Wheeler Co. v. Pullins,[2] decedent died three months before birth of the child. The mother was still legally married to another man but had been separated from her husband for some time. The mother and putative father had lived together for nine months preceding the decedent’s death. This Court stated that in its view the acts of the decedent workman immediately prior to the accident could be construed as an acknowledgment of his parentage of the child. He had lived with the mother continuously for many months and “doubtless he knew that she was en-ceinte.” “It is contrary to human experience for a man to continue his cohabitation with a woman as her husband if he entertains doubt that he is the father of the child she is bearing,” [3] stated the Court.
In Patterson v. Liberty Mutual Ins. Co.,[4] the mother not only had informed decedent of her pregnancy, but also had lived with decedent continuously from May until the decedent’s death on August 30, approximately two months after the mother’s pregnancy had begun.
American Mutual Liability Ins. Co. v. Hogan[5] involved testimony showing that the mother had lived in the same house with her mother and father all of her life. The mother had had one child by a suitor other than decedent who was born after the mother began going with the decedent. The mother had never lived with another man, held herself out to be another man’s wife, or gone through any form of marriage ceremony with any other man before beginning her courtship ' with decedent. The decedent paid a midwife to deliver the first child (which was not decedent’s), and began living with the mother in her parents’ home until the time of his injury on December 16, 1952. Decedent and the mother were introduced as husband and wife to friends in the community. They were not formally married because the mother had to undergo certain treatment *369 for “bad blood” before a marriage license could be issued to the couple. Decedent took the mother to a physician on the Sunday before the injury on Tuesday, at which time the physician told the mother she was pregnant. She immediately relayed this information to the decedent.
In the Hogan case, the mother and decedent had attempted to be ceremonially married before they began living together and holding themselves out as husband and wife. Their relationship and conduct after conception of the claimant child, along with other evidence, authorized the trier of fact to find that the decedent believed that the child the mother was carrying was begotten by him and that he acknowledged paternity of the child.
In Green v. Burch,[6] decedent and the mother of claimant children had not been lawfully married but had maintained a home together and had represented themselves to various parties as husband and wife. The decedent had recognized the mother’s two-year old daughter as his child, and “had told friends and relatives that he and the mother of the children were expecting another child.”
The only testimony produced in Hooley v. Hooley[7] was in behalf of the minor claimant. The decedent and the mother began living together in October of 1964. The decedent was killed on June 3, 1965, and the minor child was born October 13, 1965. All during his time the mother was married to another man but had earlier separated from him.
“The only direct evidence of acknowledgment by decedent was brought out on cross-examination. One of appellant’s witnesses, on direct examination, testified that Rosie, in the presence of decedent, said she was going to have a baby. However, on re-cross-examination this witness stated, ‘I said Rosie is going to have a baby, he [decedent] said yes.’ Rosie’s grandmother testified, on direct examination, that she talked with Rosie and decedent the Tuesday before he was killed and decedent said Rosie was going to have a baby and that he wanted ‘to make sure she has money to take care of them.’ On cross-examination this witness admitted that actually what was said, and all that was said, was that Rosie was going to have a baby by decedent. Rosie’s sister testified that she and decedent discussed the fact that Rosie and he were going to have a baby. On cross-examination this witness testified that Rosie told her she was going to have a baby and decedent agreed, and that he ‘wanted to support the baby well.’ ” [8]
In the Hooley case the Industrial Board denied benefits to the minor children of deceased. The Court upheld this denial, stating that “we cannot say that the evidence is such that reasonable minds could only conclude that * * * the decedent was the father of [the minor Claimant] * * * or that he acknowledged her.” The Court recited as applicable to workmen’s compensation cases a principle appearing in cases under Indiana inheritance statutes: Proof of acknowledgment must be “definite, certain and unequivocal.”
I would not establish a rule which places upon the minor claimant an inordinate burden of proof or which by its apparent rigidity might imply an erosion of the Judge’s function and prerogative. But in the proper exercise of this Court’s review function it should evaluate the evidence in light of certain minimal standards contemplated by the act. Without these minimal standards there will be no end to spurious and false claims in the type of case before us.
I am not unmindful of the liberality with which this Court has frequently interpreted the act. In Gulf Power Co. v. Pass-more,[9] a case strikingly similar to the one before us, the Deputy Commissioner denied death benefits to the posthumous illegiti *370 mate child because in his opinion the deceased employee could not have acknowledged paternity of the child. The Full Commission vacated the denial and awarded benefits.[10] We ultimately denied cer-tiorari. In Passmore, although the mother’s pregnancy had begun no more than two weeks prior to the employee’s death, the considerable evidence corroborating acknowledgment by the decedent was decidedly more definite and positive than in the instant case. The mother emphatically testified that beginning eleven days before decedent’s death she repeatedly told the decedent that she was pregnant, not that she thought she was pregnant. She and decedent continued to make wedding plans and mailed engraved invitations for the wedding. There the Court agreed with the Full Commission that the Deputy, because of a misapplication of the law to the evidence, was overly reluctant to find acknowledgment of paternity by the putative father.
In this admittedly difficult case, it is my considered opinion that the Judge of Industrial Claims and Full Commission have deviated as a matter of law from compliance with the requirement that each finding be supported by competent substantial evidence producing a result which accords with reason and logic.
I dissent.
ROBERTS and BOYD, JJ., concur.

. U. S. Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla.1951).

. 152 Fla. 96, 11 So.2d 303 (1943).

. Id. at 97, 11 So.23 303, 304 (1943).

. 110 Ga.App. 23, 137 S.E.23 549 (1964).

. 91 Ga.App. 891, 87 S.E.23 661 (1955).

. 164 Kan. 348, 189 P.2<3 892 (1948).

. 226 N.E.2d 344 (Ind.App.1967).

. Id. at 348.

. 129 So.2d 132 (Fla.1961).

. 4 Fla.Comp.Rep. 210 (1960).