Kenny Lee TARVER, Appellant (Defendant Below),

v.

Erma Jean DIX, Appellee (Plaintiff Below).

No. 3–1080A324.

Court of Appeals of Indiana, Fourth District.

June 11, 1981.

Lester A. Ottenheimer, III, Robert L. Meinzer, Jr., Ottenheimer, Silverman and Meinzer, St. John, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Appellant Kenny Lee Tarver appeals from a judgment entered against him in a paternity action. On appeal, he raises three issues:

(1) Whether there was sufficient evidence to overcome the presumption of legitimacy;

(2) Whether the trial court's order requiring him to pay support was erroneous because it was entered without the court holding a separate hearing on it; and

(3) Whether the suspended sentence of one year in prison and the probation imposed in the event of failure to give the required bond was made without authority. We affirm in part and reverse in part.

The evidence most favorable to the judgment indicates that petitioner-appellee Erma Jean Dix was married to Jonathan L. Dix on June 12, 1972. On December 28, 1974 they separated. At trial, Erma Dix testified that she had not seen Jonathan Dix since their separation although Jonathan lived with his parents only a mile and a half from her. In 1974, Erma Dix met Tarver. Even though both remained married to other persons, they began living together and they continued to live together until March of 1977 when Erma announced her pregnancy. During this period of time, appellee Dix and appellant Tarver had sexual relations daily. No men, other than Tarver and Erma Dix's brother, were ever seen entering Erma's apartment. On December 28, 1977 Erma Dix gave birth to the child who is the subject of this paternity suit.

Upon a trial before the court, special findings of fact and conclusions of law were entered in which the trial court found as follows: 1) that Jonathan Dix and Erma Dix were married on June 12, 1972, separated on December 28, 1974, and finally divorced on July 28, 1979, 2) that both Jonathan and petitioner continued to reside in East Chicago but petitioner neither visited with nor saw her estranged husband after the separation, 3) that shortly after petitioner met Tarver in 1974, they began living together as husband and wife until she became pregnant in 1977 and that they had sexual intercourse an average of two or three times per day without using any contraceptives, 4) that on December 28, 1977, petitioner gave birth to a child, and at that time was still legally married to Jonathan Dix, 5) that petitioner's last menstrual period before birth of the child was in February 1977 and the probable time of conception was during the last three weeks of March 1977, 6) that during January, February, and March 1977, petitioner had sexual intercourse with Tarver daily using no contraceptives and she did not have it with any other, 7) that Tarver was married to Cheryl Tarver while he lived with petitioner, and 8) that in February 1979 Tarver gave petitioner, through the child, $20.00, for the child's benefit. The trial court's conclusions and judgment are set out verbatim:

"The term, "access", is defined as follows: Approach, or the means, power or opportunity of approaching; sometimes importing the occurrence of sexual intercourse; otherwise, as importing the opportunity of communication for the purpose of sexual intercourse, as between husband and wife. Black's Law Dictionary, 1968, Revised 4th Edition (citations omitted).

Because Plaintiff was legally married to J. Dix, when her child, Nikia Shilah, was born, a presumption arises by statute, IC 31-6-6.1-9, that J. Dix is the biological father of said child. The presumption rebuttable has been sufficiently overcome by clear, convincing and direct evidence that he, J. Dix has absolutely no access to the Plaintiff at or near the time when the child herein was conceived. The only man having access to Plaintiff, at the time her child was conceived, was the defendant, Kenny Lee Tarver. The mere showing that Plaintiff's estranged husband, J. Dix, was, or could have been living in the same city as Plaintiff, at the time the child was conceived, does not establish that he, Dix, has access, as it is herein defined, to Plaintiff.

The Defendant, Kenny Lee Tarver, is the natural biological father of the child born to Plaintiff, Erma Jean Dix, on December 28, 1977.

WHEREFORE, the Court orders that judgment be entered on the rulings of the Court of May 9, 1980, to-wit:

The Court finds that Kenny Lee Tarver, is the father and Erma Jean Dix, is the mother of the Female Black child born on December 28, 1977, at St. Catherine's Hospital, East Chicago, Indiana, and that said child shall hereinafter bear the name of NIKIA SHILAH TARVER.

The Court further finds that the father of said child should pay the hospital and doctor all unpaid balances due them for prenatal, postnatal and medical expenses accrued for the care and treatment of the mother and child, payable directly all on or before one (1) year from date hereof; the father of said child should pay the sum of $30.00 each week for support of herein child, commencing on May 9, 1980, and payable into the office of the Clerk of this Court for disbursement to the mother. Further, the mother is awarded custody of minor child and the father is granted visitation privileges with said child.

The Court further finds that the father should give bond in the sum of $5,000.00, conditioned that he perform the judg-

ment and orders herein and failing to give bond, he should be committed to the Indiana State Farm for a period of one (1) year; that such sentence be suspended and herein father placed on probation.

IT IS THEREFORE CONSIDERED, ADJUDGED, ORDERED AND DECREED by the Court that Kenny Lee Tarver, is the father, and Erma Jean Dix, is the mother of the Black Female child born on December 28, 1977, at St. Catherine's Hospital, East Chicago, Indiana, and that said child shall hereinafter bear the name of NIKIA SHILAH TARVER.

IT IS FURTHER CONSIDERED, ADJUDGED, ORDERED AND DECREED by the Court that the father of said child shall pay the hospital and medical and doctor all unpaid balances due them for prenatal, postnatal and medical expenses accrued for the care and treatment of the mother and child, payable directly all on or before one (1) year from date hereof; the father shall pay the sum of $30.00 each week for support of the child commencing on May 9, 1980, and payable into the Office of the Clerk of this Court for disbursement to the mother.

Further, the father is ordered to pay all major hospital, medical and dental expenses for the herein child.

In addition thereto, the father shall pay into the Office of the Clerk of this Court the sum of $10.00 support service fee on or before December 31, 1980, and a like sum on January 1st of each subsequent year.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the father shall give bond in the sum of $5,000.00, conditioned that he perform the judgment and orders herein, and failing to give bond, he shall be committed to the Indiana State Farm for a period of one (1) year; that such sentence be suspended and the father placed on probation."

 Tarver first contends that there was insufficient evidence to overcome the statutory presumption of legitimacy when a

child is born to a married woman. The State argues that the statutory presumption does not apply because this action arose before IC 31–6–6.1–9 became effective.[1] This action was filed in 1978; however, the trial did not occur until 1980 after the Code section in question, which contained no savings clause, became effective. While statutes are generally given prospective effect absent a contrary legislative intent, it is also true that the jurisdiction in pending proceedings continues under the procedure directed by new legislation where the new legislation does not impair or take away previously existing rights, or deny a remedy for their enforcement, but merely modifies procedure, while providing a substantially similar remedy. *State v. Smith*, (1973) 260 Ind. 555, 297 N.E.2d 809; *Hine v. Wright*, (1941) 110 Ind.App. 385, 36 N.E.2d 972. See also 73 Am.Jur.2d § 354. The new legislation used in this case did not impair or take away any previously existing rights nor did it deny a remedy for the enforcement of such rights. It provided a substantially similar remedy while delineating more clearly the procedure to be followed in determining and enforcing this right. Thus, the statutory presumption was not erroneously applied.[2]

■ In addressing Tarver's question of sufficiency of the evidence to rebut this presumption, we consider only that evidence which tends to support the trial court's findings of fact, conclusions of law, and judgment, together with all reasonable inferences which may be drawn therefrom. *Blade Corp. v. American Drywall, Inc.*, (1980) Ind.App., 400 N.E.2d 1183. Whether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the· judgment. *In Re*

*Marriage of Miles*, (1977) 173 Ind.App. 5, 362 N.E.2d 171. In making this determination a reviewing court will accept the findings made by the trial court unless clearly erroneous and not supported by the evidence. Ind.Rules of Procedure, Trial Rule 52(A); *In Re Marriage of Miles, supra.* Furthermore, the findings will be construed together and will be liberally construed in support of the judgment. *Id.*

As to the findings, Tarver essentially asks us to reweigh the evidence. However, this court will not reweigh conflicting evidence on appeal or determine the credibility of witnesses. *Roe v. Doe*, (1972) 154 Ind.App. 203, 289 N.E.2d 528. Each finding was supported by Appellee Dix's testimony which was corroborated, in part, by her neighbor. This evidence is sufficient to support the findings of the court which must have believed appellee's testimony and her witnesses. Thus, the findings being supported by probative evidence, must be upheld because they are not clearly erroneous.

In addition, these findings are sufficient to disclose a valid basis for the judgment. Tarver argues that Jonathan Dix had "access" to his wife, appellee Dix; therefore, the statutory presumption was not overcome as the court concluded. Cases decided prior to the enactment of the current statute held that the presumption of legitimacy could be overcome by direct, clear and convincing evidence. *Beck v. Beck*, (1973) 159 Ind.App. 20, 304 N.E.d 541; *Hooley v. Hooley*, (1967) 141 Ind.App. 101, 226 N.E.2d 344; *Whitman v. Whitman*, (1966) 140 Ind.App. 289, 215 N.E.2d 689. In *Phillips v. State, ex rel.*, (1925) 82 Ind.App. 356, at 360, 145 N.E. 895, at 895 it was stated that:

---

1. IC 31–6–6.1–9 became effective October 1, 1979. It provides in part:

 (a) A man is presumed to be a child's biological father if:

 (1) He and the child's biological mother are or have been married to each other and the child is born during the marriage or within three hundred [300] days after the marriage is terminated by death, annulment, or dissolution.

2. Even without the statutory presumption, the presumption of legitimacy had developed in Indiana common law. Therefore, it appears that the new act merely codified the existing common law and did not create a new presumption. *See, e. g., L.F.R. v. R.A.R.*, (1978) 269 Ind. 97, 378 N.E.2d 855; *Buchanan v. Buchanan*, (1971) 256 Ind. 119, 267 N.E.2d 155.

"[T]he presumption could be overcome by proof that the husband was impotent; or that he was entirely absent so as to have had no access to the mother; or was entirely absent at the time the child in the course of nature must have been begotten; or was present only under such circumstances as to afford clear and satisfactory proof that there was no sexual intercourse."

Because the statute creates a presumption rather than a conclusion, the presumption imposed by the development of the Indiana common law was not changed or enlarged by the statute and remains rebuttable. *See, e. g., Miles v. State*, (1928) 189 Ind. 691, 129 N.E. 10. Thus, on appeal and reviewing the evidence most favorable to the appellee, we must determine whether the trial court could find that the presumption was overcome by direct, clear, and convincing evidence.

Tarver claims that the record is devoid of clear and convincing evidence that the husband Jonathan Dix could not have been the father because he lived only a mile and a half from his wife, appellee Dix and thus had access. We disagree. Tarver cites us to three cases to support his argument. However, he fails to note distinguishing facts.

In *Buchanan v. Buchanan*, (1971) 256 Ind. 119, 267 N.E.2d 155, appellant was the husband who actually testified that he had access to and intercourse with the appellee wife during the time in which conception occurred. Unlike the present case, there was clear evidence of access and intercourse and no evidence of non-access. Thus, such evidence was sufficient to uphold the trial court's finding of paternity against appellant husband. *See, also Darrow v. Geisen*, (1936) 102 Ind.App. 14, 200 N.E. 711.

In *L.F.R. v. R.A.R.*, (1978) 269 Ind. 97, 378 N.E.2d 855, our Indiana Supreme Court reversed a trial court and held that the evidence was insufficient to overcome the presumption that even though the parties were separated, and divorced prior to the birth of the child and the husband testified that he had no intercourse with his wife during this period. However, unlike the present case when the wife did not even see her estranged husband, this wife testified that she, in fact, had intercourse with her husband. This testimony was corroborated by witnesses who testified that the husband slept with the wife during the critical period and the fact that the husband failed to deny his presence. Both L.F.R. and R.A.R. provided evidence that the husband not only lived in the same general area, but that he had access to her as he saw her and talked to her from time to time.

The final case that Tarver relies on, *Hooley v. Hooley*, (1967) 141 Ind.App. 101, 226 N.E.2d 344, involved the review of a Full Industrial Board determination where it found the presumption unrebutted because the husband had been around his wife some twenty-four times during the critical period. Based upon the standard of review of Full Industrial Board findings, the court concluded that the evidence was not so clear and convincing as to cause reversal because reasonable minds could not only conclude that the presumption of legitimacy was rebutted.

In each of the above cases there was evidence to support a conclusion that the husband had access because each of them had actually visited with the wife during the critical period. In the present case the court's finding held just the opposite; that the appellee and her estranged husband neither visited or saw each other after their separation. As was noted earlier, the evidence most favorable to the judgment supports this finding. Under these circumstances we believe that the legal presumption of legitimacy should yield to the clear and convincing evidence that the last act of sexual intercourse between the appellee Dix and her husband occurred long before the child was conceived and that the husband's access to and intercourse with his wife was impossible in view of the finding that they neither saw nor visited with each other during this time period. Therefore, this part of the judgment is affirmed.

■ However, we must reverse and remand for a separate hearing on the issue of support. IC 31–6–6.1–10(a) states:

"Upon finding that a man is a child's biological father, the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and visitation."

On May 9, 1980, the paternity trial ended and the court entered its finding that Tarver was the father of the child and ordered him to pay support of $30.00 per week. From the record sent to us for review, we find no indication that a hearing was held by the court regarding this issue and we find no evidence of relevant factors to be considered before making the determination.[3] Without the benefit of a hearing where evidence was presented concerning the relevant factors the court could not have properly made this determination.

▪ Furthermore, the court's imposition of a one (1) year suspended sentence and probation if Tarver failed to give bond was beyond its statutory authority. While IC 31–6–6.1–14[4] permits the court to require appropriate security, bond, or other guarantee to insure performance of the support obligation, it does not specifically set out authority to commit the father to jail or place him on probation upon his failure to furnish such bond as did the former statute[5]. Where a previous statute on a subject contains certain language, and a later statute on the same subject deletes the language, a presumption exists that the legislature was cognizant of its presence, and meaning, and intended by the deletion to change the law. *Merimee v. Brumfield*, (1979) Ind.App., 397 N.E.2d 315. In view of the deletion of this language in the new statute and the above rule of construction, we find no statutory authority vested in the court to impose a one year sentence to enforce the order to furnish bond. The proper procedure to enforce this order should be in the form of contempt proceedings.

We therefore hold that the finding of paternity is affirmed and the support order and sentence upon failure to furnish bond is reversed and remanded for further proceedings not inconsistent with this opinion.

CHIPMAN and MILLER, JJ., concur.

---

3. IC 31–6–6.1–13 provides:
 (a) The court may order either or both parents to pay any reasonable amount for child support after considering all relevant factors, including the following: (1) the financial resources of the custodial parent; (2) the standard of living the child would have enjoyed had the parents been married or remained married to each other; (3) the physical and mental condition of the child and its educational needs; and (4) the financial resources and needs of the non-custodial parent.

4. IC 31–6–6.1–14 provides:
 "The court may require that the parent obliged to make support payments provide appropriate security, bond or other guarantee to insure that he will perform his obligation."

5. The former statute, covering the same subject, IC 31–4–1–22 provided in part:
 "On failure to furnish such bond the court may commit the father to jail for not more than one [1] year ... Instead of committing the father to jail, or as a condition of release therefrom, the court may commit him to a probation officer, upon such terms and conditions regarding payments and personal reports as the court may direct ..."